**In re Clifford H. McNEALY, Kathryn J. McNealy, Debtors.**

**Bankruptcy No. 3–81–00112.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

July 29, 1983.

Thomas R. Noland, Dayton, Ohio, for debtors.

Daniel A. Nagle, Dayton, Ohio, for GMAC.

George W. Ledford, Englewood, Ohio, Trustee.

---

1. As addressed in Findings of Fact and Conclusions of Law in companion adversary case

# 83–0528–BKC–SMW–A.

DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

## FACTS

Clifford H. McNealy and Kathryn J. McNealy, husband and wife, filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on 16 January 1981.

The Debtors scheduled total monthly income from "retirement and disability pay" in the amount of $793.60 for the husband and $370.00 for the wife. They budgeted the amount of $625.12 for monthly payments on 1st and 2nd mortgages on two parcels of real estate. They scheduled a total of $70,252.00 in secured claims which represented balances due on the mortgages on two parcels of real estate and $3567.00 due to G.M.A.C. on a motor vehicle. Unsecured claims scheduled were in the amount of about $8400.00, although the Trustee allowed unsecured claims as filed in the amount of $12,903.98.

A proposed Plan was duly confirmed on 24 February 1981, which provided for payment of 100% of all creditors' claims " . . . to be funded in part by the sale of the property at 5350 Springboro Pike, Dayton, Ohio, which proceeds will be applied toward creditors'·claims and, if not fully paid after the sale of the said real estate, the Plan would continue with the monthly payment until a 100% payment is made. Real estate is presently listed for sale."

The secured creditors were separately classed and G.M.A.C. paid the full value of its claim including interest ahead of unsecured creditors. Gem Savings, real estate mortgagee on two parcels of real estate (including the parcel to be sold under this Plan) would be paid " . . . outside the Plans regular payments. No delinquency." Dial Finance, a fully secured real estate mortgagee by second mortgage on the real estate to be sold also would be paid "outside the Plan." A modified Plan filed 10 May 1981, which was duly confirmed on 30 June 1981, provided administrative details for payment of real estate sales commissions and distribution of net sales proceeds from the sale of the 5350 Springboro Pike real estate.

On 21 September 1982 the Chapter 13 Trustee consented to sale of this real estate and payment in full of the two mortgages at a negotiated pay off amount. A copy of the deed was filed in the case record on 12 November 1982. Apparently, based upon the case record, the real estate sale realized no funds for distribution to general creditors, other than removing these secured creditors from the Plan.

There is no indication of record that the Debtors increased payments to the Chapter 13 Trustee, nevertheless, to augment payments to unsecured creditors from funds originally paid to the two real estate mortgagees, paid in full from the sale of the property, and for which Debtors budgeted monthly payments of $625.12 outside the Plan.

The order of confirmation specifically provided that, "During the pendency of the plan confirmed herein, all property of the estate, as defined in § 1306(a) of Title 11 of the United States Code, is within the exclusive jurisdiction of the Court and the debtor shall not, without the appropriate consent of the Chapter 13 trustee, or the Court, sell or otherwise dispose of or transfer such property other than in accordance with the terms of the plan confirmed herein."

On 25 April 1983 Kathryn J. McNealy filed an application for a hardship discharge pursuant to 11 U.S.C. § 1328(b) on the basis that Clifford H. McNealy had died on 20 February 1983, and she now receives only social security income of approximately $500.00 per month which has not been sufficient to make payments to the Chapter 13 Trustee since February, 1983. She represents that such payments "would present an extreme hardship considering her house payment is $161.00 per month and utilities run approximately $142.00 per month."

The application was set for hearing on 18 July 1983 upon notices to all creditors. G.M.A.C. filed an objection to the discharge of the Debtor as to its debt, representing that its secured claim of $2660.00 plus $567.00 in interest had been reduced only $1045.30 in principal amount and none of the interest. The Chapter 13 Trustee ap-

peared at the hearing to oppose a hardship discharge representing at bar that the Debtor cannot qualify under statutory requirements because she and her deceased husband are owners of a 1967 Travel Trailer, three motor vehicles and three parcels of real estate in addition to the one parcel sold, in which a net equity interest was scheduled.

## DECISION

### I

There can be no doubt that the Applicant is suffering from an impossible economic situation and hardship beyond her control and any possibility of a modified Plan under 11 U.S.C. § 1329 is not practicable based upon her meagre social security benefits. 11 U.S.C. § 1328(b)(1) and (3).

The opposition by G.M.A.C. and the Trustee to a hardship discharge pertain to the best interests of this particular creditor and all unsecured creditors respectively. In behalf of Debtor, however, it is urged that the right to a hardship discharge supersedes the best interest of creditors test as an independent question not concerned with the distribution of the Chapter 13 estate. It is further urged in behalf of Debtor that she does not perceive any benefit to herself from a conversion to administration under Chapter 7 of the Bankruptcy Code.

■ As a fundamental tenet of bankruptcy law and administration, the death or insanity of a bankrupt does not *ipso facto* abate the proceedings, but the case is conducted and concluded in the same manner, to the extent possible as though the death or insanity had not occurred. See Section 8 (11 U.S.C. § 26) of the Bankruptcy Act of 1898. Upon adoption of the Bankruptcy Code, Section 8 was deleted as unnecessary. H.Rept. No. 95–595, p. 368, Bkr-L Ed, Legislative History § 82:17, U.S.Code Cong. & Admin.News 1978, p. 5787. Hence, the bankruptcy proceeding will continue *in rem* with respect to the property of the estate, and a discharge will apply *in personam* to relieve a deceased Debtor (and his probate estate) of liability for dischargeable debts. The probate estate would be composed of only property exempted from the bankruptcy estate and property acquired by a debtor after the petition for relief if not included

as property of the bankruptcy case estate. Discharged claims of creditors thereby are entitled to one satisfaction from the bankruptcy case estate and not from the probate estate. H.Rept. No. 95–595, p. 384, Bkr-L Ed. Legislative History § 82:18. It is noted that it has been held that Rule 118 of the Rules of Bankruptcy Procedure adopted on 24 April 1973, which pertains to the same subject matter, is either superfluous under the Bankruptcy Code (*In Re Keefe, 7 B.R. 270, 6 B.C.D. 1421, B.L.D. 9167, 727, 3 C.B. C.2d 385* [Bkrtcy.1980] ), or not inconsistent with the Code (*In Matter of Smith, 6 B.R. 641, 6 B.C.D. 1284, 3 C.B.C.2d 8* [Bkrtcy. 1980], *CCH Bankr.L.Rptr. § 67646*).

■ It is similarly fundamental in bankruptcy case administration that the distribution of the estate and the procedures pertaining to the right of a debtor to a discharge are two separate aspects. The estate administration continues whether or not a debtor is entitled to a discharge in bankruptcy.

The notices served upon the creditors do not provide the necessary procedural due process properly to place at issue objections to Debtors' discharge as such. After the application for a hardship discharge was filed, a thirty days notice of the application should have been served setting a deadline for the filing of complaints objecting to the discharge conformably to Rule 13–404(b)(1) of the Rules of Bankruptcy Procedure. Complaints objecting to discharge would precipitate an adversary proceeding under Part VII of the Bankruptcy Rules pursuant to Rule 13–404(b)(2) and (c).

■ Thus the only issue now justiciable is the application of the essential criteria for the granting of a hardship discharge under Code Section 1328(b). The facts establish clearly that the failure to complete payments under the Plan was not due to circumstances for which Kathryn should be held accountable. 11 U.S.C. § 1328(b)(1).

The facts do not establish clearly that it would be impractical to propose and obtain approval of a modification of the plan in accordance with section 1329 to increase or

reduce the amounts of payments on the claims of unsecured creditors by the liquidation of real estate values and other non-exempt property (without a contribution from the meager income available). In fact, the only valuation of record must be derived entirely from those scheduled by Debtors, there being no evidence adduced as to appraised values by competent testimony. 11 U.S.C. § 1328(b)(3).

This deficiency must be weighed and construed by applying 1328(b)(2) and (b)(3) *in pari materia*. The court is constrained to apply a variation of the best interests test in granting a hardship discharge which requires a finding that the value of property, as of the effective date of the plan, of property actually distributed under the plan to each allowed unsecured claim at least is equal to the amount which could have been paid on the effective date of the plan on each such claim had the estate been liquidated under Chapter 7. The time perspectives must be factored into the test as required by 11 U.S.C. § 1325(a)(4). It is important to observe that this additional test as to the right to seek a hardship discharge is in the nature of a condition precedent to the right to a discharge of debts rendered nondischargeable under section 523(a) and 1322(b)(5).

Even though the evidence as to the value of the various items of nonexempt real and personal property is insufficient to enable the court to make a mature judgment as to the secondary test of the best interests of the creditors, it is important to recognize that they are by statute entitled to such a further determination under the hardship conditions to which the applicant is now laboring. A modified Plan in effect deleting monetary contributions and based upon estate values should be submitted prior to prosecuting a request for the hardship discharge. Under the § 1328(b)(2) test, the Debtor may factor her present hardship conditions into the value of property as of the effective date of a modified plan, thereby accelerating the duration and consummation of the Chapter 13 case. Perhaps a distribution of less than 100% may meet the best interests test.

## II

Whether a hardship discharge may eventually be justified, G.M.A.C. cannot accomplish its expressed purpose by opposing the discharge. Its rights are preserved as a lien creditor by lien retention conformably to 11 U.S.C. § 1325(a)(5). Furthermore, the lien was not affected by revesting of title under § 1327(c) because revesting of property of the estate of the Debtor was qualified by the terms of the confirmation order. If a modified plan is proposed, lien protection would be reexamined under both § 1325 and § 1328 as of the effective date of the modified plan.

## III

The court is constrained to note further that the issues joined as to a hardship discharge *sub judice* pertain to only one joint Debtor, Kathryn J. McNealy. Neither a hardship discharge nor a dismissal of the case of this one Debtor pursuant to § 1307 would necessarily close the estate of the deceased Debtor, Clifford H. McNealy, even though dismissal at the request of a debtor is mandatory under §§ 1307(b) and (c). These sections are not applicable to the case of a deceased debtor. A request for dismissal or conversion as to the deceased Debtor's estate can be instituted only pursuant to § 1307(c) (that is, by an "interested party") and the dismissal is not automatic. The Chapter 13 proceeding continues *in rem* with respect to property of the estate. See 11 U.S.C. § 541 and 1306. Furthermore, the decedent's probate representative would be an "interested party" as to only the exempt property or other nonestate property and as to seeking the *in personam* relief of liability for dischargeable debts under either section 1328(a) or (b).