In re Ricky Dale COLE, Debtor.

Thomas Ray HUDSON, Plaintiff,

v.

Ricky Dale COLE, Defendant.

Bankruptcy No. 18300591.
Adv. No. 1840017.

United States Bankruptcy Court,
W.D. Kentucky.

Jan. 14, 1985.

John M. Milliken, Bowling Green, Ky., for defendant.

Michael V. Pearson, Dixie R. Satterfield, Safford, Satterfield & Lanphear, Bowling Green, Ky., for plaintiff.

Henry Dickinson, Glasgow, Ky., Trustee.

MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Dead men tell no tales, in courtrooms as elsewhere, unless one is to believe a smattering of surreal accounts from ancient cases of dubious authority.[1]  Yet in the

---

1.  Death may not be a total bar to person's ability to appear in court.  In at least two unofficially reported cases from the English-speaking world, ghosts and other supernatural beings have made "special appearances" as witnesses, served as jurors, acted as counsel and even presided as judges.

In the 17th century at the Bodmin Assizes, in Cornwall, England, a deceased judge by the name of Jan Tregeagle appeared in court as a witness.  The case, heard in an early forerunner of the modern day bankruptcy court, involved the proof ·of a debt.  The debtor in the case stubbornly refused to admit, even under the

present case we are called upon to conduct a trial on the question of the intentions of a debtor who died some months ago. The case poses legal as well as practical difficulties. We begin with a review of the facts.

In November of 1982, the debtor, Ricky Dale Cole, allegedly shot and wounded Thomas Ray Hudson, the plaintiff in this action. Cole was promptly indicted on a charge of first degree assault, was brought to trial and found not guilty by a jury. Shortly after the acquittal Hudson filed a civil suit against Cole in Warren Circuit Court, seeking damages of $530,000. The case has not yet gone to trial, due in part to the intervening bankruptcy.[2]

On December 16, 1983, Cole filed a petition for relief under Chapter 7 of the Bankruptcy Code. In March, 1984, Hudson filed a complaint under 11 U.S.C. § 523(a)(6) to determine the dischargeability of what may be described for bankruptcy purposes as a contingent, unliquidated tort claim against the debtor.

On April 16, 1984, four months to the day after filing his petition, Cole was killed in an accident in Warren County.

\* \* \* \* \* \*

This case is before the court on the debtor's[3] motion to dismiss the plaintiff's dischargeability complaint. The debtor's brief argues that it would be impossible for the court to determine the debtor's intent without the benefit of testimony from the deceased. Treating the motion as one for summary judgment[4] it is clear that the motion must be denied.

Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Bankruptcy Rule 7056, states in pertinent part that a judgment favorable to the party moving for summary judgment will only be rendered if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On a motion for summary judgment

---

sternest examination, that he had ever had a contract with the creditor or that he had borrowed any money from the man. The only witness to the transaction was the late Jan Tregeagle. At one point during the trial the debtor stated: "If Tregeagle ever saw [the making of the debt], I wish to God he would come and declare it!" Tregeagle's ghost immediately answered this informal "oral subpoena" and appeared in court. He testified that the debtor did owe the sum, and a judgment was entered for the creditor.

In the far more famous case of *Scratch v. Stone,* 1 S.V. Benet 1 (Spec.Emer.Ct.N.H.1840?) (J. Hathorne) involving the validity of a chattle mortgage on an intangible (the soul of the debtor), the ghosts served as judge and jury. After a preliminary ruling on the ability of the plaintiff, an alleged foreign prince, to sue in state court the trial proceeded to the merits of the case. The eminent senator, statesman and orator Daniel Webster argued the case for the defense and won on the grounds that the initial contract of debt was unconscionable.

We are, needless to say, unwilling to go to the literally incredible lengths of these earlier courts in order to secure testimony.

In a more serious vein, it is clearly possible for a court to ascertain the intent of a deceased party through the use of evidence other than his own testimony. *Lundeen v. Cordner,* 354 F.2d 401 (8th Cir.1966). As the counsel for the plaintiff correctly notes, if it were true that the absence of the debtor's testimony would preclude

a finding of nondischargeability, then the "denial by a living Defendant of intentional action would defeat any [§ 523(a)(6)] complaint."

2. On September 21, 1984, this court granted limited relief from the automatic stay for the purpose of joining the debtor's insurance carrier in the state court civil suit and seeking a declaration of rights as to the applicability of the debtor's insurance coverage under the facts alleged in the state court complaint.

3. We will continue to refer to the moving party in this action as the debtor even though Mr. Cole is deceased. Nondischargeable liability is sought against his estate, which is defending his interests.

4. We are treating the debtor's motion to dismiss as one for summary judgment because it is a fundamental rule of bankruptcy law that the death of a debtor does not *ipso facto* abate the bankruptcy proceeding. The case is to be conducted and concluded in the same manner, to the extent possible, as though the death had not occurred. *See* Section 8 (11 U.S.C. § 26) of the Bankruptcy Act of 1898. Upon the adoption of the Bankruptcy Reform Act of 1978, Section 8 of the 1898 Act was deleted as unnecessary. H.Rept. No. 95–595, p. 368, Bkr-L.Ed., Legislative History § 82:17, U.S. Code Cong. & Admin. News 1978, p. 5787. *See also In re McNealy,* 31 B.R. 932 (Bkrtcy S.D.Ohio 1983).

a court cannot try issues of fact; rather it can only determine whether there are any issues of fact to be tried.[5] The motion is not a favored one. Where there is any doubt concerning material facts, it is resolved in favor of the party opposing the motion for summary judgment.[6]

On the facts of the present case, the critical issue of the debtor's intent will remain unresolved until proof is taken. The debtor's intent may be proven by evidence other than the direct testimony of the deceased, even though the hand of Providence has denied him a defense. We therefore must overrule the debtor's motion to dismiss the dischargeability complaint.

Our rejection of the debtor's motion to dismiss does not, by itself, resolve all of the issues raised by the case in its present posture. We now must consider how to proceed with the dischargeability complaint itself. Specifically, we should consider the propriety of abstention under the provisions of 11 U.S.C. § 305. This statute provides, in pertinent part, that:

"The court, *after notice and a hearing* may dismiss a case under this title or *may suspend all proceedings in a case* under this title, at any time if—

(1) The interests of *creditors and the debtor* would be better served by such dismissal or suspension; . . ." [Emphasis added]

The case before us calls for a determination of dischargeability of a contingent, unliquidated state law tort claim under the provisions of 11 U.S.C. § 523(a)(6). That section provides that a debtor shall not be discharged from a debt which arose as a result of a willful and malicious injury inflicted by the debtor on a creditor or his property.[7] To fully dispose of this complaint we would have to consider in addition to the willful and malicious issue, the underlying fact question of liability and the nature and amount of damages. These issues are the same ones upon which the parties are entitled to a state court jury trial.[8]

Any decision we might make on these underlying issues therefore could effectively deprive the parties of their day in state court.[9] We note that a similar denial of the party's right to have a state law claim heard by a state forum directly led to the U.S. Supreme Court's landmark decision in

---

5. *Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975); *American Manufacturers Mutual Ins. Co. v. American Broadcasting—Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972).

6. *Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1320, 1321 (2d Cir.1975). *Friedman v. Meyers,* 482 F.2d 435, 439 (2d Cir.1973).

7. Of course the party seeking to except a debt from a general discharge bears the burden of establishing each and every element of nondischargeability. *In re Treanor,* 26 B.R. 243 (Bkrtcy.W.D.Ky.1982).

8. This court clearly has "core proceeding" jurisdiction to hear this dischargeability complaint under the provisions of 28 U.S.C. § 157(b)(2)(I). It is interesting to note, however, that we have no jurisdiction under 28 U.S.C. § 157 to directly determine the debtor's liability to the plaintiff which could arise from the presently pending personal injury claim that the plaintiff has asserted against the debtor. We note in passing that the parties to this proceeding have inadvertently stumbled on a possible "end-run" to the

jurisdictional restrictions placed on the Federal Bankruptcy Courts by the 1984 Amendments. We only briefly make this observation because in the context of today's case it is unnecessary for us to decide whether it would be appropriate, in every case involving a question of the dischargeability of a contingent, personal injury or wrongful death claim, for a bankruptcy court to abstain from hearing the complaint pending resolution of the underlying state court litigation.

9. Under the more modern views of the doctrine of collateral estoppel it is possible that a state court could prevent the parties from relitigating the issues decided by this court in our determination of the dischargeability of this personal injury claim. Furthermore the plaintiff would be totally barred for all practical purposes, from pursuing his state court remedies, if we found this "debt" to be dischargeable. The preclusion of the parties from seeking a state court determination of their rights and liabilities seems, at first glance, to be against the best interests of both the debtor and creditor in this case. We expressly reserve judgment on this question pending a hearing on the abstention issue as mandated by § 305.

the *Marathon*[10] case and the recently enacted jurisdictional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984. We read *Marathon* and the 1984 Act as requiring of this court not only an invigorated respect for the judgments of state courts once entered, but a heightened awareness of the rights of litigants, undiminished by the fact of bankruptcy, to resort to the state courts as courts of first instance for the resolution of state law claims.

If the message of Marathon and the 1984 Act is as we perceive it, then the doctrine of abstention, as codified in bankruptcy law since 1978, has been commensurately strengthened. Although the permissive abstention language of 11 U.S.C. § 305 was clear enough even prior to *Marathon*, we now hear it as the bugler's call to quarters, or even to retreat. We would not go so far as to suggest that 11 U.S.C. § 305 now imposes a mandatory duty of abstention in every case in which a state-created claim comes before this court for substantive determination, but we do believe it to have become a signpost of discretion worthy of careful and continual reference.

Therefore we determine that pursuant to the provisions of 11 U.S.C. § 305, a hearing shall be held to determine whether it would be in the best interest of both the debtor and creditor for this court to suspend all proceedings in this case pending the resolution of the state court litigation. Among the factors to be considered at the hearing will be the ability of the parties to obtain a timely adjudication in state court. The hearing will be scheduled by separate order.

---

**10.** *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, 6 C.B.C.2d 785 (1982).