In re Ernest D. LINDEN and
Betty J. Linden, Debtors.

No. 94–1120.

United States District Court,
C.D. Illinois.

Nov. 10, 1994.

Roger C. Bolin, Boyle Goldsmith & Bolin, Hennepin, IL, for Ernest D. Linden and Betty J. Linden.

LeAnna L. Karnopp, Vonachen Lawless Trager & Slevin and Douglas S. Slayton, Kavanagh Scully Sudow White & Frederick P.C., Peoria, IL, for Citizens First Nat. Bank of Princeton and AgriBank FCB.

Michael D. Clark, Trustee, Peoria, IL.

### ORDER

McDADE, District Judge.

Before the Court is an appeal from a decision of the United States Bankruptcy Court. This Court has jurisdiction under 11 U.S.C. § 158(a). The Debtors, who are Appellants in this case, seek review of the bankruptcy judge's ruling denying Debtors' Motion for Discharge under 11 U.S.C. § 1228 based on the decision that depreciation of farm equipment is not an appropriate factor for calculating "disposable income" under 11 U.S.C. § 1225(b)(2). Debtors also seek review of the bankruptcy judge's denial of their request for a hardship discharge under 11 U.S.C. § 1228(b).

### BACKGROUND

The Debtors filed a Chapter 12 bankruptcy petition on April 6, 1987. Debtors' Amended Plan was confirmed on November 23, 1987.

The Plan was scheduled for a period of payments of five years. On November 30, 1992, the Trustee filed a final report asserting that the Debtors had complied with the terms of the Plan. As a result, the Debtors filed a Motion for Discharge under section 11 U.S.C. § 1228. Two unsecured creditors, Citizens First National Bank of Princeton and Agri-Bank, objected to the Debtors' discharge asserting that all of the Debtors' disposable income had not been paid to the unsecured creditors as required by the Amended Plan.

During a hearing on June 2, 1993, the Trustee admitted that he had misinterpreted the terms of the Amended Plan and had required the Debtors to pay the projected income contained within the Plan rather than basing the payments upon the actual disposable income from each year.[1] The Amended Final Report and Account of Trustee showed that the Debtors' disposable income was $14,966.71 in 1987, $4,142.09 in 1988, no disposable income in 1989, $17,049.06 in 1990, and $12,709.70 in 1991. [Doc. # 12, Ex. B]. As shown by this Report, the total disposable income over the five year period as a result of the Debtors' actual income and actual expenses was $48,867.56. The Debtors agreed that the Amended Plan required that the actual, rather than the projected, income be paid. The Debtors, however, asserted that the unsecured creditors were not entitled to any more payments under the Amended Plan because the Debtors were entitled to a deduction for depreciation in computing their disposable income.

On August 27, 1993, the bankruptcy judge filed an opinion denying Debtors' Motion for Discharge because Debtors had not complied with the terms of the Amended Plan. On September 7, 1993, the Debtors filed a Mo-

---

1. In addition to the Amended Plan, Debtors included a statement of projected annual operating income and expenses and Amended Plan payments. This statement provided:

| | |
|---|---|
| Approximate anticipated annual gross receipts | $180,000.00 |
| Approximate anticipated annual cash operating expenses | (95,000.00) |
| Subtotal | $ 85,000.00 |
| Approximate annual federal and state tax liability | (9,800.00) |
| Subtotal | $ 75,200.00 |
| Plan payments to Class SR, CC and UCC Claims | (58,410.13) |
| Subtotal | 16,789.87 |
| Living expenses allowance pursuant to Amended Plan | (15,000.00) |
| Balance Available for payment to Class U [unsecured] Claims | $ 1,798.87 |

The Trustee, instead of calculating the Debtors' actual disposable income as required by the Plan, used the projected balance of $1,798.87, stated here, as the amount of the Debtors' disposable income for each of the five years.

tion to Amend the Findings of Fact and Conclusions of Law and to Amend the Judgment of the bankruptcy court and, at this time, requested a hardship discharge. The bankruptcy court considered this to be a Motion for Reconsideration of its order, and after a hearing, denied the motion for the same reasons in his first order and because, based on the facts, the bankruptcy judge did not find that the Debtors were entitled to a hardship discharge.

## ANALYSIS

■ When a district court reviews a decision of a bankruptcy court, it reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Matter of Wiredyne*, 3 F.3d 1125, 1126 (7th Cir. 1993). There are two issues before this Court on appeal: (1) Whether depreciation can be used as an expense for calculating "disposable income" under 11 U.S.C. § 1225(b)(2); and (2) Whether the Debtors are entitled to a hardship discharge under 11 U.S.C. § 1228(a). The first issue concerns a question of law. Therefore, the Court will review the bankruptcy judge's decision, regarding this issue, *de novo*. The second issue, on the other hand, involves the bankruptcy judge's factual findings. Consequently, the Court will review this portion of the bankruptcy judge's decision for clear error.

## DISPOSABLE INCOME

■ The bankruptcy judge listed several reasons why the Debtors could not deduct depreciation in calculating their disposable income. The bankruptcy judge noted that one of these reasons was that the Debtors' Plan does not allow for deductions for depreciation. Section 4(F) of this Amended Plan provided payments to unsecured creditors as follows:

(F) Class U claims will be paid as follows: All allowed unsecured claims will be paid on a pro-rata basis from the debtors' disposable income as that term is defined by the Bankruptcy Code after the payment of the aforesaid claims, the expenses of the debtors' farming operation, including annual income tax obligations and after allowing a reasonable living expenses currently to

be fixed in the sum of $15,000.00 per annum. The percentage of the debtors' disposable income to be paid to each unsecured claimant will be in the same percentage (sic) as the individual claim bears to be (sic) total sum of all allowed unsecured claims.

Payments, as aforesaid, shall be made for a period of five years with the initial payment due one year from the date of confirmation. All payments so made shall be in full settlement of the debtors' obligations to the creditors. Upon making the fifth and final payment as herein set forth, the balance of any allowed unsecured claims shall be discharged.

This provision does not provide that depreciation may be deducted in calculating disposable income. In fact, this provision requires that disposable income be calculated as defined by the bankruptcy code. Consequently, the Court needs to determine whether the bankruptcy code's definition of "disposable income" allows deductions for depreciation.

■ Disposable income is defined in the bankruptcy code as follows:

For purposes of this subsection, "disposable income" means income necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business.

11 U.S.C. § 1225(b)(2). This definition provides that disposable income is calculated by subtracting *payments* for expenditures from any income received by a debtor. As one bankruptcy court has stated, "disposable income is defined as income which is *not* reasonably necessary for the 'payment of expenditures necessary for the continuation, preservation and operation of the debtor's business.'" *In re Janssen Charolais Ranch, Inc.*, 73 B.R. 125, 128 (Bankr.D.Mont.1987). Another bankruptcy court defined disposable income as "a residual amount calculated as follows: total income − [minus] personal living expenses − [minus] business expenses including cash − [minus] plan payments other than to unsecured creditors." *In re Rott,*

94 B.R. 163, 166 (Bankr.D.N.D.1988). In addition, at least one other bankruptcy judge has questioned "whether paper losses such as depreciation are proper expenses for purposes of calculating 'disposable income, ...'" *In re Coffman*, 90 B.R. 878, 886 (Bankr. W.D.Tenn.1988).

■ The Court finds that depreciation is not a proper factor in calculating disposable income under section 1225(b)(2). Section 1225(b)(2) indicates that disposable income is to be calculated by subtracting expenditures paid by a debtor from income received by the debtor. The key word in the definition of disposable income, as relevant to this case, is *payment*. Disposable income is computed by subtracting payments for expenditures from a debtor's income.[2] As the bankruptcy judge properly noted, depreciation does not involve payments.[3] Therefore, because the definition does not encompass deductions from income ·due to a paper loss—i.e., a nonpayment—depreciation is not a proper factor in calculating disposable income.[4]

■ In addition, the Court finds, that even if depreciation was proper for calculating disposable income, that the Debtors' Plan did not contemplate a deduction for depreciation. The Seventh Circuit in *Matter of Weber*, 25 F.3d 413, 416 (7th Cir.1994), held that the interpretation of the terms of a plan by a bankruptcy judge, who confirmed the debt-

or's plan, is subject to deferential review and will only be reversed if there has been an abuse of discretion. In this case, the bankruptcy judge stated that "a deduction for depreciation based upon an allowable income tax deduction was never contemplated." The Court does not find that the terms of the Plan are inconsistent with the bankruptcy judge's conclusion. Therefore, because the bankruptcy judge did not abuse his discretion, the Court finds that depreciation was properly disallowed in calculating disposable income under the Plan.

The Debtors also present an alternative argument. Debtors contend that, even if depreciation expenses are not allowed, the terms of the Plan have been satisfied because "determination of the debtors' disposable income is made by taking the income and expense for the life of the plan and deducting the expenses, also for the life of the plan, to determine the total net disposable income." In other words, Debtors claim that disposable income is to be determined by the disposable income received over the life of the Plan and it is not to be calculated on a yearly basis. If disposable income is calculated on the basis of five years as Debtors suggest, Debtors do not owe the unsecured creditors anything and discharge is proper because Debtors disposable income for this period

2. The Court notes that the "payment" or "deductible expenses need not be restricted to those incurred during the period of the plan." *In re Stottlemyre*, 146 B.R. 234, 236 (Bankr.W.D.Mo. 1992) (quoting *In re Bowbly*, 113 B.R. 983, 988 (Bankr.S.D.Ill.1990)). The basis for this reasoning is that the definition of disposable income includes the term "continuation." Therefore, in some instances, a debtor is allowed to retain "funds reasonably necessary to finance the purchase of seed, feed, fertilizer, and equipment for next years [sic] crops." *Id.* These funds are retained in order to make future *payments* "for the continuation, preservation, and operation of the debtor's business." 11 U.S.C. § 1225(b)(2).

3. "[D]epreciation is simply an accounting device intended to allocate the cost of using an asset to the periods in which that use contributes to revenue by approximating the gradual diminution in value of the asset over time due to age, wear and tear, and obsolescence." *Hawkins v. C.I.R.*, 713 F.2d 347, 351 (8th Cir.1983).

4. The Court notes that the Debtors argue that their use of depreciation is more frugal than

either buying or leasing equipment which are allowable expenses. Parenthetically, the Court finds that both of these activities would require a payment. The Debtors contend that they are being punished for being frugal. It appears that the Debtors' argument, however, is flawed because the Debtors fail to take into account that the Trustee and the Court must find the Debtors' expenditures are "commercially reasonable under all the facts and circumstances." *In re Wood*, 122 B.R. 107 (Bankr.D.Idaho 1990) (quoting *In re Coffman*, 90 B.R. 878, 886 (Bankr. W.D.Tenn.1988)). In this case, it does not appear that the Debtors would have been allowed to buy new equipment or lease equipment because there is no contention that the equipment the Debtors sought to depreciate needed to be replaced. Therefore, on the facts of this case, the Debtors' purchase or lease of equipment would not be allowed because it would be commercially unreasonable. Consequently, the Debtors contention that they are being punished for being frugal is without merit.

was negative.[5] For this proposition, Debtors rely on *In re Schmidt,* 145 B.R. 983 (D.S.D. 1991).

In addressing this issue, the Court, as a preliminary matter, notes that it does not appear that this issue was raised before the bankruptcy court. Consequently, the issue is waived. *Weber,* 25 F.3d at 415. In addition, even if this issue had been properly raised, the Court finds that it has no merit. First, it is not clear to the Court that *Schmidt* stands for the proposition asserted by the Debtors. Moreover, the Court finds that the Seventh Circuit's decision in *Weber* and the terms of the Plan are dispositive of this issue.

In *Weber,* the debtors' "theory was that because their disposable income over the three year period was negative, they owed nothing to their unsecured creditors and were thus entitled to a discharge." *Id.* at 415. The bankruptcy judge in that case rejected that argument stating, "[t]he plan does not contemplate payment of the net disposable income over a total of three years, thus permitting a loss in any one year to offset the profit from another year. Instead, the plan requires payments 'for each crop year.'" *Id.* The Seventh Circuit found that the terms of the plan allowed two different interpretations, one being that payments were due each year and the other being payments were due at the end of the three year period. *Id.* at 416. The Seventh Circuit determined, however, that because the bankruptcy judge, who confirmed the plan, found that the plan "required the distribution of disposable income at the end of each year," this interpretation was entitled to deference. *Id.* The Seventh Circuit held that the terms of the plan required annual payments of disposable income during the life of the plan because the bankruptcy judge's interpretation of the language of the plan was reasonable.

In this case, there is no explicit interpretation of the Plan as to this issue because it was not raised before the bankruptcy judge.

However, the Court finds that the bankruptcy judge's discussion of the other issues in the case indicate that the bankruptcy judge interpreted the terms of the Plan to require annual payments of disposable income during the Plan. The bankruptcy judge in his opinion made the following statement:

> As the Trustee now recognizes, and a number of courts have so held, disposable income must be computed after the fact, based on actual income and expenses incurred, rather than based upon income and expense projections made by the debtor at the time the plan was confirmed. *In re Fleshman, supra.* At the end of each plan year, the Trustee should review the monthly income and expense statements filed by the debtors and recommend a specific amount to the debtor for distribution to unsecured creditors. *In re Kelly,* 85 B.R. 832 (Bkrtcy.E.D.Mo.1988).

This language clearly indicates that the bankruptcy judge understood that the terms of the Plan required annual payments of the Debtors' disposable income to the unsecured creditors.

In addition, the plain language of the Plan supports this interpretation. The Plan required the Debtors to make payments "for a period of five years with the initial payment due one year from the date of confirmation ... [and] [u]pon making the fifth and final payment ... the balance of any allowed unsecured claims shall be discharged." It is obvious that if the Plan had only required that one payment be made at the end of the five year payment, an initial payment could not possibly be due "one year from the date of confirmation." In addition, the language of the Plan refers to "the fifth and final payment." As a matter of logic, a five year plan requiring five payments indicates that the payments were to be made annually and not at the end of the plan period. Therefore, the only reasonable interpretation of the Plan requires that the Debtors' disposable income was to be calculated and paid to the unsecured creditors on a yearly basis.[6]

---

5. On the other hand, if disposable income is based on a yearly basis, the unsecured creditors are entitled to the Debtors' disposable income for the years in which they did not suffer a loss.

6. The Debtors also appear to be questioning whether the monthly reports of the Trustee were properly used to calculate the Debtors' disposable income. The Debtors state:

## HARDSHIP DISCHARGE

■ Next, the Debtors claim that they are entitled to a hardship discharge under 11 U.S.C. § 1228(b). This subsection provides:

At any time after confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1229 is not practicable.

11 U.S.C. § 1228(b). Only the first requirement of this provision is in dispute. Both sides agree that the last two requirements are satisfied. The Debtors contend that they should not be held accountable for failing to make complete payments under the Plan. The Debtors contend that the error as to the amount of payments was solely the fault of the Trustee and, therefore, the Debtors should not be held accountable for the Trustee's error. The bankruptcy judge, in addressing this contention, orally stated:

The only thing that I heard today went to the first requirement, having to do with the failure to complete the payments is due to circumstances for which the debtor should not justifiably be held accountable,

namely he did what the trustee asked him. But I think you have to remember in these kind of—of arrangements that it was the debtor's plan. It was the debtor who decided how payments would be made pursuant to that plan. So I don't think that what occurred here was due to circumstances beyond the debtor's control. I think the debtor, really in these kind of cases, with some minor—or few exceptions, really the debtor is controlling what's going on here and the trustee is monitoring things and I just don't think that the hardship discharge provisions can be used in this particular situation.

Although it appears that no court has addressed what "circumstances" satisfy the first requirement of section 1228(b), there are cases which have considered what "circumstances" are necessary in the context of a Chapter 13 hardship discharge (11 U.S.C. § 1328(b)) which contains language identical to the language in section 1228(b). Courts which have considered this issue, have required a debtor to establish that the debtor was not at fault in failing to complete the plan. *In re Nelson*, 135 B.R. 304, 307 (Bankr.N.D.Ill.1991). Generally, courts require "the presence of catastrophic circumstances." *Id.* In *Nelson*, the court found that the debtors were not entitled to a hardship discharge due to the loss of use of their vehicle, the inability of one of the debtors to find full-time employment, or an unexpected expense because all of these reasons were economic. The Court determined that these economic reasons were not the type of catastrophic circumstances which warrant a hardship discharge.

One case in which the circumstances were sufficient to warrant a hardship discharge under section 1328(b) was *In the Matter of*

[that the Trustee's] reports are not reliable in this instance for the reason that they include loan proceeds and other transfers from one bank account to another by the debtors and reported by the debtors on their monthly reports to the trustee. In this instance, the trustee simply added all items deposited into one account as 'income' and considered transfers out as 'disbursements.'

The upshot of this contention is that the Debtors want the Court to analyze whether the Debtors allocated all of their disposable income to the unsecured creditors by using the Debtors' tax returns. The Court will not address this issue, however, because it does not appear that the Debtors raised this issue before the bankruptcy judge. Therefore, the Debtors have waived this issue and it will not be considered by the Court. *Weber*, 25 F.3d at 415.

*McNealy,* 31 B.R. 932 (Bankr.S.D.Ohio 1983). In *McNealy,* the bankruptcy court found that "[t]he facts establish clearly that the failure to complete payments under the Plan was not due to circumstances for which [the debtor] should be held accountable." *Id.* at 934. The court based this decision on its finding that the debtor's husband had died and that the debtor was, as a result, receiving only $500.00 a month in social security payments which were not sufficient to cover the debtor's house payments, utilities, and debt obligations. *Id.* at 933. Therefore, in *McNealy,* the bankruptcy judge found that the debtor was not at fault in failing to complete the plan. *Id.* at 934.

In this case, the facts presented do not warrant a hardship discharge under section 1228(b). Based on the record, the Court finds that the Debtors were fully aware of the terms of their Plan. Consequently, the Debtors were in a position to rectify the error made by the Trustee in calculating their disposable income. Because the Debtors could have acted to correct this error, this is not a case in which a hardship discharge is warranted. Furthermore, there are no "catastrophic circumstances" which have caused the Debtors to be unable to comply with the terms of their Plan. Therefore, the Court finds that the bankruptcy judge's denial of the Debtors' request for a hardship discharge is not clearly erroneous.

IT IS THEREFORE ORDERED that the judgment of the bankruptcy court is **AFFIRMED.**