**In re Ralph E. SCHLEPPI, Debtor.**

**Bankruptcy No. 2–87–04104.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 19, 1989.

**902**

Nancy L. Koerner, Emens, Hurd, Kegler & Ritter, Columbus, Ohio for debtor.

Carol L. Smith, Gahanna, Ohio, for Clarence and Kathryn Scholz.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Office of U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court upon the Motion for Hardship Discharge ("Motion") filed by Ralph E. Schleppi, the debtor in this Chapter 13 case ("Debtor"). Memoranda in opposition to the Motion have been filed by Clarence and Kathryn Scholz, former in-laws of the Debtor, and by the Chapter 13 trustee ("Trustee"). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine under authority of 28 U.S.C. § 157(b)(1) and (2)(J). The following opinion and order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### II. *Factual Background*

Debtor filed a petition under Chapter 13 of the Bankruptcy Code on September 16, 1987. His Chapter 13 plan ("Plan") initially was confirmed by the Court by order entered on December 18, 1987. An amended order of confirmation was entered on January 29, 1988, to correct a typographical error in the initial order submitted by Debtor's counsel. The Plan provides for monthly payments of $200 for a period of 12 months; thereafter, Debtor is required to submit payments of $600 per month for the remainder of the 55-month term of the Plan. The Plan provides further that all creditors shall receive full payment on their allowed claims.

Debtor made all payments required by the Plan for the first few months following confirmation—through April 30, 1989—but apparently ceased making payments beginning in May, 1989. Debtor filed the instant Motion on June 2, 1989. From the Plan payments made to date, the Trustee has made distributions fully satisfying administrative and priority unsecured claims and providing a .008% dividend to general, unsecured claimholders.

At the time of the Plan's confirmation and for the preceding three years, Debtor was employed by Equitable Securities, a "penny-stock" brokerage firm. This firm, however, ceased business operations as of December 31, 1988. Anticipating Equitable Securities' uncertain future, Debtor secured new employment with Advest, another brokerage firm, on December 15, 1988. Under the terms of Debtor's compensation arrangement with Advest Debtor was paid a salary of $3,000 monthly for the first two months of his employment; $2,000 per month for the next two months; $1,000 monthly for the following two months; and, since June 1, 1989, a commission total-

ing 35 percent of sales. At the commencement of the Plan, Debtor's annual earnings at Equitable Securities approximated $48,-000. Debtor's current annual income at Advest is significantly less than the $48,-000 he earned at Equitable Securities.

In 1984 Debtor and his former wife filed a Chapter 7 petition. Debtor was granted a bankruptcy discharge in February of 1985. On March 15, 1985, Debtor obtained a divorce from his former wife. Pursuant to the divorce decree, Debtor is required to pay weekly child support totaling $198.90 for his three children. Debtor also is required to pay Plaintiff, either for her benefit or for the benefit of their children, a biannual clothing allowance of $300. Debtor also is required to pay 60 percent of his wife's and children's medical expenses and maintain health and life insurance coverage on Plaintiff and/or the children, which totals $171.69 monthly. Citing his change of employment and reduced earnings, Debtor recently has applied to the Common Pleas Court of Fairfield County for a reduction in his child support obligations. That application remains pending before the state court.

Debtor remarried in 1985. His current wife has custody of a 12 year-old son from a former marriage. Debtor's wife receives $65 weekly in child support payments from her former husband. Debtor contributes a limited amount to the living expenses and support of his current household.

### III. *Discussion*

The statutory authority for the award of a hardship discharge is 11 U.S.C. § 1328(b), which provides:

> At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—
>
> (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
>
> (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not

less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title [11 U.S.C.S. §§ 707 et seq.] on such date; and

> (3) modification of the plan under section 1329 of this title [11 U.S.C.S. § 1329] is not practicable.

Thus, § 1328(b) contains three, independent conditions precedent to the granting of a hardship discharge.

■ It is axiomatic that the party asserting the affirmative bears the burden of persuasion, *i.e.*, setting forth authority sufficient to persuade the Court that the relief requested is appropriate. *See Lilienthal's Tobacco v. United States*, 97 U.S. 237, 24 L.Ed. 901 (1877); *Joseph A. Bass Co. v. United States*, 340 F.2d 842, 844 (8th Cir. 1965); *In re Gilmore*, 94 B.R. 118, 119 (Bankr.S.D.Ohio 1988); *In re Closson*, 100 B.R. 345, 347 (Bankr.S.D.Ohio 1989). Accordingly, in order to qualify for a hardship discharge, the Debtor must persuade the Court that he has complied with each subsection of § 1328(b). Unsubstantiated and conclusory statements are insufficient. *In re Dark*, 87 B.R. 497, 498 (Bankr.N.D.Ohio 1988).

■ The first prong of Section 1328, set forth in subsection (b)(1), permits the Court to grant a hardship discharge to a debtor who has not completed payments under the plan only if the debtor can demonstrate that his failure to complete such payments is due to circumstances beyond his control. Courts confronted with a request for a hardship discharge typically have limited its application to catastrophic circumstances. *See In re Dark*, 87 B.R. 497 (Bankr.N.D.Ohio 1988) (a hardship discharge was denied where debtor's marriage had terminated, debtor had lost the financial assistance from her mother due to the mother's death, and debtor had surgery which resulted in a reduction of her employment and income); *In re Graham*, 63 B.R. 95 (Bankr.E.D.Pa.1986) (a hardship discharge was granted due to the death of debtor); *In re Bond*, 36 B.R. 49 (Bankr.E.D.N.C. 1984) (a hardship discharge was granted where debtor had died); *In re McNealy*, 31

B.R. 932 (Bankr.S.D.Ohio 1983) (a hardship discharge was denied due to death of co-debtor). Although the Debtor's alleged reduced income does not result from dire or catastrophic circumstances, and in this Court's opinion may be a temporary occurrence until Debtor more fully establishes a client base at Advest, the Scholzes and Trustee apparently concede that the Debtor's failure to complete payments as provided by the Plan is due to circumstances for which he should not justly be held accountable. Accordingly, the Court, somewhat reluctantly, finds compliance with the first part of § 1328(b)'s tri-partite test.

The second prong of § 1328(b) places the burden of proof upon the Debtor to demonstrate that the best interests test has been satisfied. As one noted commentator has stated:

> The best interests test under section 1328(b)(2) is essentially the same as that required for the confirmation of a plan under section 1325(d)(4), except that their temporal perspectives differ.

5 *Collier on Bankruptcy* ¶ 1328.01[2][b][ii], 1328–10 (15th ed. 1989). Specifically, the Debtor must affirmatively establish that the value of the funds *actually* distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim in a Chapter 7 liquidation proceeding. *In re Bond,* 36 B.R. 49, 51 (Bankr.E.D.N.C.1984). Although Debtor's counsel argued that the plan thus far had paid out approximately one percent to the holders of unsecured claims, more than such claimholders would have received if the debtor had filed for relief pursuant to Chapter 7 of the Code, the Court must limit its factual findings to the record made at the hearing. Having reviewed the record, the Court has found no evidence establishing that the value, as of the effective date of the Plan, of property actually distributed under the Plan to allowed unsecured claims was equal to or greater than the amount that would have been paid on such claims if the estate of the Debtor had been liquidated under Chapter 7. The Court is not unmindful that the Trustee filed a written recommendation regarding confirmation prior to Court approval of the Plan. That recommendation apparently contained a calculation of the best interests test; however, neither that or any subsequent calculation was made part of the record at the hearing, nor was there any admissible evidence to support counsel's assertion. Accordingly, the Court is unable to find that the Debtor has fulfilled the requirements of § 1328(b)(2).

Even if Debtor had established compliance with § 1328(b)(1) and (2), he has fallen far short of the requirement delineated in § 1328(b)(3). This third and final prong of § 1328(b) requires the Debtor to demonstrate that modification of the Plan pursuant to 11 U.S.C.S. § 1329 is not practicable. In an attempt, apparently, to meet the requirements of subsection (b)(3), Debtor contends that, when he filed his Chapter 13 petition, he was able to fund both his child support obligations and the Plan. Due to his reduced earnings, Debtor alleges he is now unable to fulfill both of these obligations. However, Debtor has made no attempt to modify the Plan or explain why modification is not practicable.

· Despite Debtor's assertions to the contrary, the record indicates that modification of the Plan is a viable option for the Debtor. Specifically, it would appear that a downward adjustment of the Plan's proposed 100 percent dividend to unsecured creditors is practicable and would enable the Debtor to complete his Plan. As Collier has stated:

> Modification of the plan is thus a solution to the debtor's problems which is preferred by the Code. It should be attempted whenever it is feasible for the debtor, who could thereby preserve the normal Chapter 13 discharge.

5 *Collier on Bankruptcy* ¶ 1328.01[2][b][ii], 1328–11 (15th ed. 1989). The Debtor's failure to establish the impracticability of modification is, standing alone, fatal to the motion.

The Court notes, as an ancillary matter, that Debtor has filed in the state court a motion to modify his child support obligation. If that motion were granted, the

Debtor either would be able to successfully complete the Plan as confirmed or he could seek modification of the Plan without the need to seek or obtain a hardship discharge. Admittedly, that motion has not yet been decided and there is no guarantee that it will be granted, in whole or in part. Nevertheless, it was the Debtor's burden to establish impracticability of modification. He has not met this burden.

For the foregoing reasons, the Motion for Hardship Discharge is hereby DENIED.

IT IS SO ORDERED.