**In re William J. WHITE and Charlene J. White, Debtors.**

**Bankruptcy No. 85 B 08505.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

April 16, 1991.

Timothy P. Whelan, Pietsch, Cuchna, Popejoy and Whelan, Wheaton, for debtors, William J. White and Charlene J. White.

Craig Phelps, Chicago, Ill., chapter 13 trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the amended motion of the Debtors for a hardship discharge pursuant to 11 U.S.C. § 1328(b) and on the motion of Craig Phelps, as Chapter 13 standing trustee (the "Trustee"), to dismiss the case pursuant to 11 U.S.C. § 1307(c)(6). For the reasons set forth herein, the Court having reviewed the pleadings and the exhibits attached thereto, hereby denies the motion for a hardship discharge and grants the motion to dismiss the case.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. The motions constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), and (O).

## II. FACTS AND BACKGROUND

On July 8, 1985, the Debtors filed a Chapter 13 petition. They proposed to pay one hundred percent of their allowed secured debts and sixty-five percent of their allowed unsecured debts over a sixty month period through regular monthly payments of $281.00. The plan was confirmed on September 27, 1985. Champion Federal Savings & Loan Association, f/k/a Bloomington Federal Savings & Loan Association ("Champion") was scheduled as a secured creditor in the amount of $17,000.00. The collateral securing the debt was a 1984 Chevrolet Conversion Van. Payments to Champion were apparently funded by a credit disability insurance policy issued by the Prudential Insurance Co. ("Prudential"), but that coverage was discontinued

in February 1987. In addition, one of the Debtors, William J. White ("William") was determined to be disabled pursuant to the Social Security Act, for the period January 29, 1985 through February 25, 1986. On May 9, 1986, an administrative law judge found that William was entitled to social security disability benefits commencing January 29, 1985, and continuing through the month of April, 1986. The Court has been furnished a copy of the administrative law judge's findings, conclusions and decision. Moreover, the Court has also been supplied with a January 27, 1986, physician's report and diagnosis of William's condition of ill being and medical history which further explains his temporary partial disability.

After the disability payments ceased, the Debtors were unable to continue paying the monthly installment payments to Champion. A default occurred, and on April 24, 1987, the Court granted the motion of Champion to modify the automatic stay and take possession of and sell the vehicle.[1] The Court authorized Champion to apply the proceeds to the outstanding balance of the indebtedness and Champion was given leave to file a proof of claim for the deficiency owing on the indebtedness. Champion subsequently filed an amended proof of claim in the amount of $10,840.42 for such unsecured deficiency balance owed by the Debtors on the loan after liquidation of the collateral. Champion's amended claim increased the total to be paid under the terms of the plan by $7,046.27 (sixty-five percent of $10,840.42). The last payment received by the Trustee was on September 14, 1990. Thus far, $17,360.00 has been paid by the Debtors to the Trustee under the plan.

On November 27, 1990, the Court orally denied a prior motion of the Debtors for a hardship discharge. Thereafter, on April 3, 1991 the Debtors filed the instant amended motion supported by the above-described additional documentation and cited authorities. The Debtors claim that as a result of the increase in the amount needed to com-

plete the plan, due to the Champion deficiency, the payments under the confirmed plan are insufficient to successfully accomplish the terms of the plan, namely a sixty-five percent dividend distribution on allowed claims filed by the unsecured creditors. The Debtors further allege that the circumstances under which the total amount of allowed unsecured claims was increased under the plan is not a fact for which the Debtors should be held accountable, because income from the disability payments upon which they relied to make the vehicle payments ceased. They could no longer afford to maintain those payments, thus necessitating the return of the vehicle, which in turn increased the total dollar amount to be paid the unsecured creditors under the plan. In addition, the Debtors contend that the value of the property distributed under the plan as of the effective date thereof has resulted in a forty-five percent payment of the total unsecured claims, which is more than the fifteen percent the unsecured creditors would have received in a Chapter 7 liquidation. Lastly, the Debtors maintain that modification of the plan is not practicable pursuant to 11 U.S.C. § 1322(c). Counsel for the Debtors was given an opportunity for an evidentiary hearing and declined.

The Trustee did not object to the motion for a hardship discharge. Rather, the Trustee seeks to dismiss the case pursuant to section 1307(c)(6) for material default under the confirmed plan. In support of the motion, the Trustee states that the last payment received was on September 14, 1990, and the Debtors are delinquent in the sum of $905.00. Moreover, the Trustee asserts that the balance due under the confirmed plan is $6,272.00.

## III. APPLICABLE STANDARDS

### A. HARDSHIP DISCHARGE PURSUANT TO 11 U.S.C. § 1328(b)

The statutory authority for the award of a hardship discharge is 11 U.S.C. § 1328(b), which provides:

---

**1.** The Honorable Frederick J. Hertz was originally assigned the case when it was filed in 1985. The Honorable Erwin I. Katz was assigned the case on November 2, 1987, upon Judge Hertz leaving the bench. Thereafter, the case was reassigned to this Judge on February 17, 1988.

At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

 (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

 (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

 (3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). Accordingly, section 1328(b) contains three independent conditions precedent to the granting of a hardship discharge. In order to qualify for a hardship discharge, the Debtors must persuade the Court that they have complied with each subsection of section 1328(b). *In re Schleppi*, 103 B.R. 901, 903 (Bankr.S.D. Ohio 1989); *In re Marrero*, 7 B.R. 589 (Bankr.D.P.R.1980).

■ The first prong of section 1328(b)(1) permits the Court to grant a hardship discharge to a debtor who has not completed payments under the plan, only if the debtor can demonstrate that his failure to complete such payments is due to circumstances beyond his control. Courts have limited the application of hardship discharge to catastrophic circumstances. *See In re Dark*, 87 B.R. 497 (Bankr.N.D.Ohio 1988) (a hardship discharge was denied where debtor's marriage had terminated, debtor had lost the financial assistance from her mother due to the mother's death, and debtor had surgery which resulted in a reduction of her employment and income); *In re Graham*, 63 B.R. 95 (Bankr.E.D.Pa. 1986) (the death of the debtor warranted a hardship discharge); *In re Bond*, 36 B.R. 49 (Bankr.E.D.N.C.1984) (a hardship discharge was allowed where debtor had died). Unanticipated death precluding completion of payments under a confirmed plan has been understandably held to be a circumstance beyond the debtor's control. As one leading authority has noted: "[h]ardship discharge under § 1328(b) is reserved for the truly worst of the awfuls—something more than just the temporary loss of a job or temporary physical disability." K. Lundin, *Chapter 13 Bankruptcy*, § 9.18 at 9–26 (1990).

■ The second prong of section 1328(b) places the burden of proof upon the Debtors to demonstrate that the best interests test has been satisfied. As one commentator noted: "[t]he best interests test under section 1328(b)(2) is essentially the same as that required for the confirmation of a plan under section 1325(d)(4) (footnote omitted), except that their temporal perspectives differ." 5 *Collier on Bankruptcy*, ¶ 1328.01[2][b][ii] at 1328–16 (15th ed. 1991). The Debtors must affirmatively establish that the value of the funds actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim in a Chapter 7 liquidation proceeding. *In re Schleppi*, 103 B.R. at 904; *In re Bond*, 36 B.R. at 51; *In re McNealy*, 31 B.R. 932 (Bankr.S.D.Ohio 1983) (a hardship discharge was denied despite death of co-debtor where evidence was insufficient to satisfy best interests test for creditors).

■ The third and final prong of section 1328(b) requires the Debtors to demonstrate that modification of the plan pursuant to section 1329 is not practicable. As Collier stated, "[m]odification of the plan is thus a solution to the debtor's problems which is preferred by the Code. It should be attempted whenever it is feasible for the debtor, who could thereby preserve the normal Chapter 13 discharge." 5 *Collier on Bankruptcy*, ¶ 1328.01[2][b][ii] at 1328–17 (15th ed. 1991). The Debtor's failure to establish the impracticability of modification is, standing alone, fatal to the motion. *Schleppi*, 103 B.R. at 904.

## B. 11 U.S.C. § 1307(c)(6)

■ 11 U.S.C. § 1307 sets forth the terms for dismissal of a Chapter 13 case and provides in relevant part:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(6) material default by the debtor with respect to a term of a confirmed plan.

11 U.S.C. § 1307(c)(6).

The Court will follow the line of authority that considers the Chapter 13 trustee a party in interest for purposes of section 1307. *See In re Faaland,* 37 B.R. 407, 409 (Bankr.D.N.D.1984); *In re Kelsey,* 6 B.R. 114, 117 (Bankr.S.D.Tex.1980).

■ Dismissal or conversion under this section is not automatic, rather it is a matter of the Court's discretion. *In re Green,* 64 B.R. 530 (9th Cir.BAP 1986); *In re Smith,* 85 B.R. 729 (E.D.Va.1988); *In re Sando,* 30 B.R. 474 (E.D.Pa.1983). Generally, a court will find dismissal or conversion appropriate when efforts to cure a default are unsuccessful and the plan cannot be modified so as to make it feasible for completion. *See 5 Collier on Bankruptcy,* ¶ 1307.01[4][vi] at 1307–13 (15th ed. 1991). If the default resulted from circumstances beyond the control of the Debtors and has thereafter been remedied, the Court may find that the default is not material. *In re Durben,* 70 B.R. 14 (Bankr.S.D.Ohio 1986). A material default by the Debtors, however, justifies the dismissal of the case. *Cf. In re Green,* 64 B.R. 530 (9th Cir.BAP 1986); *In re Midkiff,* 85 B.R. 467 (Bankr.S.D.Ohio 1988); *In re Broman,* 82 B.R. 581 (Bankr.D.Colo.1988); *In re Garcia,* 42 B.R. 33 (Bankr.D.Colo. 1984).

## IV. DISCUSSION

### A. THE MOTION FOR HARDSHIP DISCHARGE

■ Pursuant to the first prong of section 1328(b), the Court finds that the Debt-ors' reduced income as a result of the cessation of the temporary disability payments to William does not result from catastrophic circumstances directly affecting both Debtors. The temporary disability payments resulted from lower back pain. The physician's medical report dated January 27, 1986, concluded with the impression of chronic low back pain in William, and that he was partially disabled with regards to work activity. It also noted that he could work an eight hour day. The social security disability benefits lasted approximately one year, and were awarded in May 1986, approximately five years ago. Disability insurance coverage from Prudential was alleged to have discontinued in February 1987, but no explanation therefore is given. That occurred over four years ago.

The Debtors, as early as 1986, were fully aware of the fact that payments from both Prudential and Social Security Administration would not continue through the remaining term of the plan. William was only temporarily and partially disabled, and subsequently returned to work in March 1987, although no evidence was introduced with respect to his subsequent employment and income. William's hardship is far less than permanent or totally disabling. The nature, extent, and degree of severity of William's chronic low back pain are not of such permanence and hardship to constitute the proper characterization as catastrophic in light of the judicial gloss interpreting section 1328(b). Accordingly, the Court finds that the Debtors' failure to complete payments as required by their confirmed plan is not due to circumstances for which they should not be justly held accountable. Thus, the Debtors have not complied with the first requirement of section 1328(b).

■ The Debtors allege in the motion that thus far under the plan, they have paid approximately forty-five percent to the unsecured creditors, which is more than such claimants would have received if the Debtors had filed a Chapter 7. Notwithstanding the Debtors' blanket assertions,

no evidence has been adduced establishing that the value of property, as of the effective date of the plan, actually distributed under the plan to unsecured creditors, was equal to or greater than the amount they would have received on such claims if the Debtors had liquidated under Chapter 7 back in 1985. Counsel for the Debtors was given the opportunity to proffer evidence and declined to do so. Unsubstantiated and conclusory statements regarding an inability to fund a plan are insufficient to grant a hardship discharge. *In re Dark,* 87 B.R. at 498.

Although the plan was confirmed by Judge Hertz in accordance with section 1325(a) which also has a best interests test, neither those calculations made at the September 27, 1985 confirmation hearing, nor any subsequent or other calculations were made part of the record in support of this prong of the test which considers actual distributions under the plan. The only evidence submitted by the Debtors is a purported copy of the Trustee's periodic report dated February 6, 1991. The report appears to have been computer generated and contains various columns of entries, the significance of which have not been explained and are not self-evident. Same does not comprehensively show on its face, without benefit of explanatory testimonial or other evidence, that the best interests test of section 1328(b)(2) has been satisfied. Absent additional evidence not proffered to date, this element has not been proven by a preponderance of the evidence. Hence, the Court finds that the Debtors have failed to meet their burden with respect to the second prong of section 1328(b).

 Under the third and final part of the test, it is clear that modification of the plan is not now a viable alternative because section 1322(c) provides that a Chapter 13 plan cannot propose payments in excess of five years. The plan was confirmed on September 27, 1985, and the Debtors have already exceeded the five year statutory limitation. No explanation has been offered for why the Debtors waited so long after their disability insurance and social security disability payments terminated as late as 1987, before they moved to amend in 1990. The Debtors previously filed a motion to modify the plan when they were experiencing financial difficulties, but that motion, however, was not filed until July 24, 1990, and was withdrawn on August 7, 1990, shortly before the expiration of the five year limit under section 1322(c). Although hindsight is usually 20/20, no explanation has been advanced for the lack of any timely and prompt action to attempt to amend the confirmed plan back in 1987. Pursuant to section 1329, the Debtors could have timely moved to reduce dividends to allowed unsecured claimants shortly after the disability benefits ceased from the Prudential and Social Security Administration. The Court finds that the Debtors have met their burden under the third prong of section 1328(b). Nevertheless, the motion must be denied as the first two elements of the tri-partite test have not been established. All elements must be satisfied before a hardship discharge can be properly granted.

## B. THE MOTION TO DISMISS

 The Trustee has moved to dismiss the case for material default under a confirmed plan. The Court finds that the Debtors' failure to make sufficient payments to allow dividend distributions to the unsecured creditors totaling sixty-five percent of the allowed unsecured claims, constitutes a material default warranting dismissal of the case. Section 1327 binds the Debtors, like their creditors, to the terms of the confirmed plan. Unsecured creditors have received less than the proposed sixty-five percent pro rata dividend. In addition, the fact that the Debtors have exceeded the five year limitation imposed under section 1322(c) further mandates the Court's exercise of its discretion in favor of dismissal.

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies the amended motion of the Debtors for a hardship discharge under section 1328(b). The Court hereby grants the motion of the Trustee to dismiss the

case for material default pursuant to section 1307(c)(6).

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.