**In re Edmond E. ROBERTS, Sharon L. Roberts, Debtors.**

**Bankruptcy No. 93–10308.**

United States Bankruptcy Court, D. Rhode Island.

April 14, 2000.

Peter G. Berman, Raskin & Berman, Providence, RI, for Debtors.

John Boyajian, Boyajian, Harrington & Richardson, Providence, RI, Chapter 13 Trustee.

## *OPINION AND ORDER*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on: (1) the Chapter 13 Trustee's Motion to Dismiss this confirmed Chapter 13 case; and (2) the Debtors' Motion for entry of discharge or in the alternative, for a hardship discharge pursuant to 11 U.S.C. § 1328(b). The Trustee argues that the Debtors' plan is incapable of completion, in light of an IRS tax obligation in excess of $42,000 incurred through Mr. Roberts' failure to pay post-petition trust fund taxes. In response, the Debtors argue that they are entitled to a discharge because they have made all payments called for under the plan, even though unsecured creditors will not receive the ten percent dividend promised in the plan. We agree with and adopt the position of the Trustee, and for the reasons stated below: (1) grant the Trustee's motion to dismiss; (2) deny the Debtors' motion for entry of discharge; and (3) deny the Debtors' request for a hardship discharge.

## *TRAVEL*

On February 5, 1993, the Debtors filed a joint Chapter 13 petition and an order confirming their plan was entered on May 25, 1993.[1] The confirmation order provided *inter alia* that: "All unsecured creditors shall receive at least 10% of the amount of their claim duly proved and allowed by the Court." Confirmation Order, Docket No. 9, p. 2, ¶ 10. Over the next six years the Trustee filed six motions

---

1. The Debtors' Chapter 13 plan has run longer than 5 years, and beyond the time permitted by Section 1322(d). The original plan was for five years and on August 16, 1998, we ruled *in this case* that it would be proper to extend the time to complete plan payments without violating Section 1322(b). *See In re*

*Black,* 78 B.R. 840 (Bankr.S.D.Ohio 1987). Because this Court, in retrospect, made a mistake in judgment early on in the case does not require us to compound that error by again approving this Debtor's post-petition conduct.

to dismiss, and all of said motions were resolved between the parties without court intervention, except for the present motion.[2]

## BACKGROUND

On or about November 25, 1996, the IRS filed its first amended unsecured priority claim in the amount of $15,469, for unpaid post-petition taxes for the 1995 tax year. On September 23, 1999, the IRS filed a second amended claim, increasing its claim to $42,000. Thereafter, on December 13, 1999, the IRS filed a third amended claim, increasing its claim to $53,619 for unpaid trust fund taxes for the tax years 1990, 1995, 1996, and 1997.

The Trustee contends that during the long duration of this case, money that should have gone to unsecured creditors has been paid to the IRS because of the Debtors' failure to segregate and keep current with post-petition trust fund taxes, and that as a result there are now insufficient funds and no time to complete the plan. The Debtors' primary argument in rebuttal is that the Trustee should be estopped from arguing that there are insufficient funds to pay off the plan because the Trustee never raised that issue in any of his prior motions to dismiss. The Debtors submit that they have paid into the plan what was asked of them and that they should now be discharged. Alternatively, the Debtors request a hardship discharge under Section 1328(b).

## DISCUSSION

A.  *Discharge Under § 1328(a):*

■  Under 11 U.S.C. § 1328(a), a debtor is entitled to a discharge "[a]s soon as practicable after completion by the debtor of all payments under the plan." Here, the Debtors argue that they have made all required payments, and that they are therefore entitled to discharge. The logic of the Debtors' argument and the premise upon which it is based are rejected. The Debtors' plan promised unsecured credi-

tors "at least 10% of the amount of their claim duly proved and allowed by the Court." Confirmation Order, Docket No. 9, p. 2, ¶ 10. The "'completion of payments' occurs when the debtor has paid the percentage owed to each class of creditors as provided for in the plan.... The substance of a plan looks to the nature of the debtor's obligation to the debtor's creditors, not to the number of payments proposed." *In re Phelps,* 149 B.R. 534 (Bankr.N.D.Ill.1993) (*citing In re Chancellor,* 78 B.R. 529, 530 (Bankr.N.D.Ill.1987)); *see also In re Rivera,* 177 B.R. 332, 334–35 (Bankr.C.D.Cal.1995); *In re Guernsey,* 189 B.R. 477, 479–80 (Bankr.D.Minn.1995). Simply put, the Roberts have not paid ten percent to unsecured creditors as contemplated and ordered under the plan as confirmed.

Neither are the Debtors, who have not sought a modification of their plan, entitled to a discharge under 1328(a). *See Rivera,* 177 B.R. at 335 ("the percentage to be paid allowed unsecured claims, once fixed by the order confirming the Chapter 13 plan, can only be changed by plan amendment").

■  As for the Debtors' estoppel argument, it is not the Trustee's duty to remind, monitor or prod debtors to pay post-petition trust fund taxes. Edmund Roberts, fully aware of his duty to segregate and pay trust fund taxes, repeatedly and continuously failed to do so, and he received the direct benefit of said default (i.e., free use of the money). As a result, unsecured creditors will not receive the amount promised by the Confirmation Order because over a seven year period the Debtor has dissipated trust fund assets which were never his to spend. This is not the type of conduct for which debtors should be rewarded with a discharge, and so the estoppel argument is rejected.

B.  *Discharge Under § 1328(b):*

■  Section 1328(b) states:

---

2.  On April 27, 1999, we granted the Trustee's (fifth) motion to dismiss. However, the Debt-

ors moved for reconsideration and the parties agreed to vacate the order of dismissal.

(b) At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). In *In re Bandilli*, we described the standard as follows:

"In order to qualify for a hardship discharge, the Debtors must persuade the Court that they have complied with each subsection of section 1328(b)." *In re White*, 126 B.R. 542, 545 (Bankr.N.D.Ill. 1991).... Regarding subsection (1) of 1328(b), most courts have limited its application to compelling circumstances. *See id.* (and cases cited therein). A Chapter 13 guru has written that a hardship discharge is "reserved for the truly worst of the awfuls...." K. Lundin, Chapter 13 Bankruptcy, § 9.18 at 9–26 (1990). Some courts take a more relaxed approach and allow a hardship discharge "due to economic circumstances that did not exist nor were foreseeable at the time of confirmation of the plan, where those circumstances are beyond the debtor's control, and where the debtor has made every effort to overcome those circumstances but is unable to complete his plan payments." *In re Edwards*, 207 B.R. 728 (Bankr. N.D.Fla.1997).

*In re Bandilli*, 218 B.R. 273, 274 (Bankr. D.R.I.1998), *aff'd* 231 B.R. 836 (1st Cir. BAP 1999). Based on the record in this case, the Debtors do not qualify for a hardship discharge even under the more forgiving Florida standard.

Here the Trustee concedes that subsections 2 and 3 of Section 1328(b) have been satisfied, but he correctly points out that the Debtors' inability to complete the plan payments is no one's doing but their own. The only reason this case is in its current posture is the Debtors' failure over a five-year period to pay post-petition trust fund taxes to the IRS. The result urged by these Debtors is not what Congress intended when it enacted Section 1328(b), and to accord such relief would certainly border on and probably cross over into the area of reversible error. The Debtors' request for a hardship discharge is DENIED.

For the reasons argued by the Trustee, the motion to dismiss is GRANTED.

Enter judgment consistent with this opinion.