**In re Damian CUMMINS, Casi Cummins, Debtors.**

**No. 98–03221–C.**

United States Bankruptcy Court, N.D. Iowa.

Sept. 5, 2001.

David Nadler, Cedar Rapids, IA, for debtor.

Carol Dunbar, Waterloo, IA, Chapter 13 Trustee.

### ORDER RE MOTION FOR HARDSHIP DISCHARGE

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for hearing on August 28, 2001 on Debtor's Motion for Hardship Discharge. Debtors Damian and Casi Cummins appeared at hearing with their attorney, David Nadler. Carol Dunbar appeared as Chapter 13 Trustee. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J), and (O).

### FINDINGS OF FACT

Debtors Damian and Casi Cummins reside in Shellsburg, Iowa. They filed a voluntary Chapter 13 petition on October 27, 1998. Debtors plan was confirmed on January 6, 1999. Their plan provides for monthly payments of $183 for 36 months. The total to be paid under the plan is $6,588. Debtors commenced payments and were current until April 2001.

On April 16, 2001, Debtors filed a Motion for Hardship Discharge under 11 U.S.C. § 1328(b). The motion asserts that, due to circumstances for which Debtors should not justly be held accountable, they should be granted a hardship discharge. The reasons stated for the hardship discharge was: "Mr. Cummins' medical condition." On May 29, 2001, the Trustee filed a report stating that, from the commencement of a plan, she has received a total of $5,124. After payment of Trustee's fees, attorney's fees, and payments to secured creditors, $342.43 of the total amount paid was available for unsecured creditors.

At the time of filing the petition, both Debtors were employed. However, Debtor Casi Cummins has had two children since the filing of the plan: Courtney in January of 2000; and Chase in April of 2001. The parties decided that Casi Cummins would not return to employment because of the expense of daycare.

The stated reason for the hardship discharge is two injuries sustained by Damian Cummins. In August of 1999, he injured his right hand. He is a union carpenter and was unable to work for a period of time. He returned to work for approximately six months until December, 2000 when he injured his right wrist. He is now medically cleared to return to work though he remained unemployed. Prior to the hearing, he had received one unemployment check in the amount of $561.38. He was unsure how long the unemployment benefits would last.

Because Mrs. Cummins has not been working and because of the injury to Mr. Cummins, Debtors are unable to make their plan payments. The last payment was in April of 2001. Debtors have been borrowing money on a periodic basis from Mrs. Cummins' mother over the last six months. Debtors offered Exhibit "A" which showed net disposable income of $183 at confirmation. However, as of the time of hearing, Debtors had a deficiency of $666 per month.

## CONCLUSIONS OF LAW

▄ Debtors request discharge under 1328(b). That section states as follows:

b. At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

modification of the plan under 1329 of this title is not practicable.

Debtors have the burden to prove that they meet the requirements of 1328(b). *In re Nelson*, 135 B.R. 304, 307 (Bankr. N.D.Ill.1991); *In re Schleppi*, 103 B.R. 901, 903 (Bankr.S.D.Ohio 1989). The three subsections of 1328(b) are to be read in the conjunctive. *In re Dark*, 87 B.R. 497, 499 (Bankr.N.D.Ohio 1988). Thus, in order to qualify for a hardship discharge, Debtors must persuade the Court that they satisfy

each subsection of 1328(b). *Id.* The granting of a hardship discharge is discretionary with the court. *Id.* at 498.

▄ The first subsection of 1328(b) requires that the circumstances leading to the debtor's failure to make payments be beyond the debtor's control. When confronted with a request for a hardship discharge under Chapter 13, bankruptcy courts have typically limited its application to catastrophic circumstances. *Schleppi*, 103 B.R. at 903. "A catastrophe denotes a great and sudden disaster. It bears the sense of being outside the control of those whom it hurts." *In re Weaver*, No. Y87-00327S, slip op. at 8 (Bankr.N.D.Iowa Dec. 7, 1990) (considering hardship discharge in Chapter 12 under 1228(b), which is identical to 1328(b)). Reasons which are essentially economic do not generally support a hardship discharge under 1328(b). *Nelson*, 135 B.R. at 307. The circumstances must be "truly the worst of the awfuls-something more than just the temporary loss of a job or a temporary physical disability." *Id.* (citation omitted). An unanticipated death precluding payments under a confirmed Chapter 13 plan has understandably been held to be such a catastrophic circumstance which is beyond the debtor's control to support granting a hardship discharge. *In re White*, 126 B.R. 542, 545 (Bankr.N.D.Ill.1991).

A review of the few cases considering whether circumstances are beyond the debtor's control discloses that hardship discharges are rarely granted other than in the case of a debtor's death. In *Nelson*, the debtor's truck broke down, after which he could not find full time employment, and an unexpected expense occurred during a dispute with a bank. 135 B.R. at 307. In *White*, the debtors' loss of disability income which was committed to making car payments under the plan resulted in the debtors being unable to make pay-

ments to unsecured creditors as required under the plan. 126 B.R. at 544. In *Schleppi*, the brokerage firm employing the debtor ceased business resulting in and fifty percent decrease in the debtor's income. 103 B.R. at 902. In all of these cases, the courts concluded that the debtors had failed their burden to prove that their inability to make plan payments was "due to circumstances for the debtor[s] should not justly be held accountable" under 1328(b)(1).

In contrast, courts have granted hardship discharges where a debtor or codebtor has died during the pendency of a Chapter 13 Plan. In *In re Pecenka*, No. 83–02223, slip op. at 1–2 (Bankr.N.D.Iowa Jan. 31, 1986), rev'd on other grounds, No. 86–2030 (N.D.Iowa Jan. 15, 1987), this Court granted a 1328(b) discharge where the lengthy terminal illness and death of a codebtor dramatically reduced the ability of the surviving debtor to make plan payments. Another court determined that the debtor could not be held accountable for failure to complete payments when he died after paying $5,174 of the $5,600 required by his Chapter 13 plan. *In re Graham*, 63 B.R. 95, 96 (Bankr.E.D.Pa.1986); *see also In re Bond*, 36 B.R. 49, 51 (Bankr. E.D.N.C.1984) (stating that the death of debtor, who died of cancer leaving two minor children, was certainly beyond her control); *In re McNealy*, 31 B.R. 932, 934 (Bankr.S.D.Ohio 1983) (finding that a debtor's death is not a circumstance for which the surviving codebtor should be held accountable).

■ The second subsection of 1328(b) requires that unsecured creditors actually receive no less than they would have received in a Chapter 7 liquidation. This is a "best interests" test identical to that required for confirmation of a Chapter 13 plan in 1325(a)(4). *White*, 126 B.R. at 545; *Schleppi*, 103 B.R. at 904. Where unse-

cured creditors would receive no distribution in a Chapter 7 liquidation, any payment to them in a Chapter 13 plan satisfies this requirement. *Nelson*, 135 B.R. at 308.

■ The third prong of 1328(b) is the requirement that modification under 1329 is not practicable. Under 1329, the modified plan must meet the statutory requirements for confirmation and may not extend the life of the plan beyond five years after the first payment on the original plan was due. *See Nelson*, 135 B.R. at 308. Modification is not "practicable" if there is no source of income to fund the modified plan. *Bond*, 36 B.R. at 51. One court has held that this prong was not satisfied where circumstances changed soon after confirmation but the debtor waited to request relief until it was too late to modify the plan. *Nelson*, 135 B.R. at 308.

## CONCLUSIONS

■ As defined in § 1328, Debtors must satisfy three requirements to warrant granting of a hardship discharge. The first element requires Debtors to show that they are unable to complete the payments due to circumstances for which they should not justly be held accountable. This is an extremely high standard. To satisfy this requirement, bankruptcy courts have typically limited its application to catastrophic circumstances. Circumstances which are economic will not support a hardship discharge under § 1328(b).

The facts in this case reveal young Debtors who have made a sincere effort to repay their obligations under Chapter 13. They appear honest and forthright in the presentation of their present circumstances. However, viewed in the light most favorable to Debtors, the circumstances upon which they rely to seek a hardship discharge do not measure up to the catastrophic circumstances necessary to warrant satisfaction of the first criteria

of § 1328(b). While it is true that Mr. Cummins was injured in two separate incidents, he is presently capable of employment and has been medically cleared to return to employment at this time. The record reflects that he is drawing unemployment insurance at this time and will apparently be able to resume work when it becomes available.

Additionally, a substantial component of the parties' inability to complete this plan is the fact that Mrs. Cummins is no longer employed. At the time of the filing, she was employed at Osco Drugs but has elected to remain at home with the parties' young children because of daycare expense. While these circumstances pose a financial hardship, they are the type of economic reason which does not support a hardship discharge.

In summary, though the parties economic situation is unfavorable, a hardship discharge under Chapter 13 is reserved for extraordinary circumstances which are described as catastrophic. This Court cannot conclude that the circumstances which bring Mr. and Mrs. Cummins to Court seeking a hardship discharge rise to that level. The Court finds that Debtors have failed to satisfy their burden of establishing the first prong of § 1328(b). As such, the Court need not address the second and third prongs. It would appear that unsecured creditors would receive more under the Chapter 13 than they would in a Chapter 7, though the report submitted by the Trustee would indicate that the difference is minimal. Additionally, Debtors have asserted that modification of their Chapter 13 plan is not practicable.

 Because the parties have sought a hardship discharge and modification is not practical, the Court must consider dismissal under § 1307(c)(6). This section provides that the Court may dismiss a Chapter 13 case "for cause, including a material fault by the debtor with respect to a term of a confirmed plan". 11 U.S.C. § 1307(c)(6). Debtors have failed to make payments since April 2001. They are in substantial default under the plan. As Debtors cannot complete plan payments and since modification is not practicable, the Court concludes that Debtors cannot cure the deficiency in the foreseeable future. The failure to make payments constitutes a material default under § 1307(c)(6) making dismissal appropriate.

**WHEREFORE,** Debtors' Motion for Hardship Discharge is DENIED.

**FURTHER,** the case is DISMISSED.