In re Francis E. BANDILLI and Diane L. Bandilli, Debtors.

Francis E. Bandilli and Diane L. Bandilli, Appellants,

v.

John Boyajian, Trustee, Appellee.

BAP No. RI 98–025.

United States Bankruptcy Appellate Panel of the First Circuit.

March 23, 1999.

3. *See* Appendix, p. 414.

Russell D. Raskin, Raskin & Berman, Providence, RI, for Appellants.

John Boyajian, Boyajian, Harrington & Richardson, Providence, RI, for Appellee.

Before GOODMAN, LAMOUTTE, BOROFF, Bankruptcy Judges.

PER CURIAM.

The Debtors, Francis Bandilli and Diane Bandilli, (the "Debtors") appeal from the bankruptcy court order denying the Debtors' motion for a hardship discharge. For the reasons set forth, we affirm.

## JURISDICTION

The bankruptcy appellate panel has jurisdiction of the appeal pursuant to 28 U.S.C. § 158(b).

## STANDARD OF REVIEW

■ The grant or denial of a debtor's request for a hardship discharge is within the discretion of the bankruptcy court, and the standard of review is abuse of discretion. Judicial discretion is described by the First Circuit as "necessarily broad—but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *In re Zeitler,* 221 B.R. 934, 937 (1st Cir. BAP 1998) (quoting *Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg., Co.,* 864 F.2d 927, 929 (1st Cir.1988)). The Debtors argue that the bankruptcy court improperly considered their failure to disclose their prior bankruptcy as a factor in denying their request for a hardship discharge.

## FACTS [1]

The Debtors filed a petition for relief under Chapter 13 on April 14, 1997 in the United States Bankruptcy Court for the District of Rhode Island. On August 5, 1997[2] an Order of Confirmation entered. Three and a half months later, the Debtors filed a motion seeking a hardship discharge pursuant to 11 U.S.C. § 1328(b). The Debtors allege that Mrs. Bandilli suffered from a serious medical condition that deteriorated shortly after confirmation and as a result of her illness, they had reduced income and could not make plan payments. The Debtors argue that they suffered changed circumstances for which they should not be held accountable.

The bankruptcy court conducted an evidentiary hearing and concluded that the Debtors failed to meet their burden of proof because, *inter alia,* the Debtors offered no credible evidence to support their claim that they suffered a loss of income as a result of Mrs. Bandilli's deteriorating health. It was undisputed below that Mrs. Bandilli clearly suffers from a serious medical condition, and has suffered from that condition for thirty-four years. In addition, Mrs. Bandilli testified that her condition worsened in the months just after confirmation, but has since stabilized. The bankruptcy court concluded that there was insufficient evidence under 11 U.S.C. § 1328(b)(1). There was little, if any, evidence that Mrs. Bandilli's worsened condition actually interfered with the Debtors'

---

1. The facts are drawn from the order denying the motion for hardship discharge entered on March 4, 1998 by the bankruptcy court.

2. At the time of confirmation, the bankruptcy court was not aware that the Debtors had filed a Chapter 7 petition in 1994 in Massachusetts in which they discharged $340,000 in unsecured debt.

ability to perform their obligations under the plan.

On the basis of the Debtors' schedules, the bankruptcy court concluded that at the time the plan was proposed, Mr. Bandilli had three sources of income[3]: (1) $3,200 per month as a self-employed pet groomer; (2) $500 per month from real property investments; and (3) $1,200 per month in wages from U–Haul. On direct examination, Mrs. Bandilli testified that her husband was missing work to take her to chemotherapy and as a result, had reduced hours and lower wages from U–Haul. On cross-examination, Mrs. Bandilli changed her testimony and stated that her husband's wages from U–Haul were $1,200, the income reduction was in his self-employed income from his work as a pet groomer. Other than Mrs. Bandilli's testimony, there is no evidence in the record to support their claim that they suffered any reduction in grooming income.

## DISCUSSION

To determine whether a debtor should be allowed a hardship discharge, the bankruptcy court must look to 11 U.S.C. § 1328(b), which provides in relevant part, as follows:

■ 11 U.S.C. § 1328(b) provides as follows:

At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if-

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been

liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

The Debtors bear the burden of proof, and must satisfy the court on all three elements of 11 U.S.C. § 1328(b). *In re Dark*, 87 B.R. 497 (Bankr.N.D.Ohio 1988) (unsubstantiated and conclusory statements regarding inability to fund plan are insufficient). Of the three elements, the parties agree that the second element[4] has been met. The third element is not at issue because the Debtors do not challenge the bankruptcy court's determination that the Debtors failed to offer any evidence, i.e., that plan modification would not be practical. The Debtors' failure to satisfy this single element is sufficient to support the denial of the hardship discharge. *In re White*, 126 B.R. 542, 544 (Bankr. N.D.Ill.1991)(three independent conditions precedent to the granting of a hardship discharge); *In re Schleppi*, 103 B.R. 901, 904, (Bankr.S.D.Ohio 1989)(failure to establish impracticability of plan modification is, standing alone, fatal). The bankruptcy court could have properly denied the hardship discharge based solely on this absence of evidence.

■ Since the bankruptcy court weighed each of the elements of 11 U.S.C. § 1328(b), we address the Debtors' arguments that the bankruptcy court considered additional improper factors in its analysis of the first element of § 1328(b), i.e., whether there were circumstances beyond the Debtors' control that justify a hardship discharge. The issue of what qualifies as "circumstances for which the debtor should not justly be held accountable" under 11 U.S.C. § 1328(b) is one of first impression. One leading authority has noted: "[h]ardship discharge under § 1328(b) is reserved for the truly worst of the awfuls-something more than just the temporary loss of a job or temporary physical disability." K. Lundin, Chapter 13 Bankruptcy, § 9.18 at 9–26 (1990); *see also In re White*, 126 B.R. at 545. Although there is no

---

**3.** At the hearing, Mrs. Bandilli testified that she was receiving disability payments equal to what she was earning at the time of confirmation, so her income has not decreased at all. Any decrease in income must necessarily be in her husband's income.

**4.** The parties agree that the second element, the best interests test, was satisfied.

express requirement in 11 U.S.C. § 1328(b) that a debtor prove the existence of catastrophic circumstances, most bankruptcy courts that have addressed the issue have allowed a hardship discharge only when a debtor has suffered from catastrophic circumstances that directly cause the debtor to be unable to complete plan payments. *In re Graham*, 63 B.R. 95 (Bankr.E.D.Pa.1986)(granted discharge upon death of the debtor); *In re Bond*, 36 B.R. 49 (Bankr.E.D.N.C.1984) (discharge where debtor died). We are unwilling to read the word catastrophic into the statute.

Congress has not hesitated in several areas of the Bankruptcy Code to insert a "charged" term to better elucidate its intention. For example, in § 707(b), dismissal is only appropriate where the court finds "substantial abuse." In § 523(a)(8), discharge of a student loan is permitted only where the court finds that nondischargeability of the debt would cause an "undue hardship." And, in § 524(c), the court must determine the absence of "undue hardship" before reaffirmation of a prepetition debt by an individual debtor will be deemed enforceable or require counsel for the debtor to so certify. Yet, for the first element of § 1328(b), Congress has asked only that the Court determine whether the debtor is "justly ... accountable" for the plan's failure. The word "accountable" is comparatively mild to the emotionally-laden term "catastrophic."[5]

Of course, we are mindful that a request for discharge under § 1328(b) merits special vigilance. Creditors do not enjoy the same participation in the Chapter 13 confirmation process as is afforded creditors in Chapter 11, and, with a § 1328(b) discharge, the debtor is deemed to have reorganized his or her financial affairs without meeting his or her postpetition obligations. A bankruptcy court asked to grant a discharge under Chapter 13, notwithstanding the debtor's failure to comply with its postpetition promises, should treat the request as a matter of some gravity and consider that granting unjustified requests will likely discourage effort by some debtors to meet their plan obligations when financial strain inevitably intrudes into their postconfirmation lives. On the other hand, when the request is justified, the insertion of additional conditions is not. *See In re Edwards*, 207 B.R. 728, 730 (Bankr.N.D.Fla. 1997)(no catastrophic circumstances, but discharge allowed where economic circumstances giving rise to failure to complete plan payments did not exist and were not foreseeable at the time of confirmation.)

The determination of whether a debtor is justly accountable for his or her failure to make payments under his or her Chapter 13 plan is necessarily fact-driven, with the emphasis properly focused on the nature and quality of the intervening event or events upon which the debtor relies. Considerations by the court in that regard should include:

a) whether the debtor has presented substantial evidence that he or she had the ability and intention to perform under the plan at the time of confirmation;

b) whether the debtor did materially perform under the plan from the date of confirmation until the date of the intervening event or events;

c) whether the intervening event or events were reasonably foreseeable at the time of confirmation of the Chapter 13 plan;

d) whether the intervening event or events are expected to continue in the reasonably foreseeable future;

e) whether the debtor had control, direct or indirect, of the intervening event or events; and

f) whether the intervening event or events constituted a sufficient and proximate cause for the failure to make the required payments.

In the case before us, the Debtors failed to show sufficient justification for the bankruptcy court to grant them a discharge under § 1328(b). Mrs. Bandilli's chronic condition existed at the time of confirmation and although she suffered a temporary relapse, she testified that her condition

---

**5.** Black's Law Dictionary defines the term "accountable" as "subject to pay; responsible; liable." Black's Law Dictionary 19 (6th ed.1990).

had stabilized by the time of the hearing. The Debtors offered little or no evidence of decreased income and no credible evidence of any correlation between the alleged decrease in income and Mrs. Bandilli's ongoing medical condition. The bankruptcy court's findings of fact are supported by the evidence and are not clearly erroneous. We have given due regard to the bankruptcy court's determination that Mrs. Bandilli lacked credibility. *See* Fed. R. Bankr.p. 8013. The bankruptcy court found Mrs. Bandilli's testimonial quantification of the loss in income to be "vague and unconvincing,"[6] in part, because the Debtors failed to disclose their prior bankruptcy filing. The Debtors argue that the bankruptcy court improperly considered their failure to disclose their prior bankruptcy as a factor in denying the hardship discharge. We reject this argument. The bankruptcy court considered the truthfulness and accuracy of information contained in the Bandillis' petition and accompanying schedules as a factor in determining Mrs. Bandilli's lack of credibility. Other than medical records, the Debtors' evidence consisted solely of the testimony of Mrs. Bandilli, and they must suffer the consequences of the bankruptcy court's determination that she was not credible. The Debtors failed to prove that their inability to complete plan payments was due to circumstances for which they should not "justly be held accountable." 11 U.S.C. § 1328(b)(1).

The Debtors also argue that the bankruptcy court improperly considered and unfavorably weighed the short[7] length of time between confirmation and the date the hardship discharge was requested. It was proper for the bankruptcy court to consider and compare the information provided at confirmation against the information being offered in support of the hardship discharge to determine if the circumstances alleged at the time of the hardship hearing were known or reasonably foreseeable at the time of confirmation. The bankruptcy court correctly considered the elements of 11 U.S.C.

§ 1328(b) and did not abuse its discretion when it denied the hardship discharge.

## CONCLUSION

For these reasons, the order of the bankruptcy court is AFFIRMED.

---

6. *See* March 3, 1998 Order at p. 3.

7. It was only three and one-half months between the date of confirmation and the date the Bandillis requested a hardship discharge.