In re Edmond ROBERTS and
Sharon Roberts, Debtors.

Edmond Roberts and Sharon
Roberts, Appellants,

v.

John Boyajian, Chapter 13
Trustee, Appellee.

BAP No. RI 00–060.

United States Bankruptcy Appellate Panel
of the First Circuit.

Nov. 28, 2000.

Peter G. Berman, Raskin & Berman, Providence, RI, for Appellants.

John Boyajian, Boyajian, Harrington & Richardson, Providence, RI, for Appellee.

Before LAMOUTTE, HAINES, DEASY, U.S. Bankruptcy Appellate Panel Judges.

DEASY, Bankruptcy Judge.

Edmond and Sharon Roberts (the "Debtors") appeal the bankruptcy court's dismissal of their Chapter 13 case and denial of Mrs. Robert's request for entry of a hardship discharge. For the reasons outlined below, we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Debtors filed a joint bankruptcy petition under Chapter 13 on February 5, 1993. Their joint Chapter 13 plan (the "Plan") provided for payment of an Internal Revenue Service ("IRS") priority claim in the amount of $9,000.00 and for payment of ten percent of the Debtors' unsecured creditors' claims. *See* Debtor's Plan for Payment at ¶¶ I.B.2 and I.C. The Plan further provided that "Post–Petition claims allowed under Section 1305 shall be paid in monthly installments, within their appropriate class, which shall commence on the date of [the] allowance of said claim and conclude on the last payment under the Plan." *See id.* at ¶ V.

The Plan was confirmed on May 20, 1993. The order confirming the Plan provided that the Debtors would make sixty

monthly payments of $474.00, that priority tax claims for which claims were properly filed would be ‍ paid first, and that the unsecured creditors would receive at least ten percent of their claims. *See* Order Confirming Plan at ¶¶ 7, 8, and 10.

On or about September 19, 1995, John Boyajian, the Chapter 13 trustee (the "Trustee"), filed the first of six motions to dismiss the Debtors' case. The Trustee alleged that the Debtors were in arrears four months, or $1,896.00. When the Debtors became current, the Trustee withdrew his motion. On or about January 12, 1996, the Trustee filed his second motion to dismiss. Again, the Debtors were in arrears. This time the Debtors owed $930.00, or approximately two payments. The Trustee withdrew this motion upon the Debtors' payment of the arrearage.

In November 1996, the IRS filed, pursuant to 11 U.S.C. § 1305(a), a postpetition claim in the amount of $15,469.00 for trust fund taxes accruing postpetition with respect to a corporation owned and operated by Mr. Roberts. It is undisputed that no hearings were held regarding the allowance or disallowance of this claim. In any event, the Trustee began making payments on account of this increased IRS claim.

On or about April 18, 1997, the Trustee filed a third motion to dismiss, again, on the basis that the Debtors had fallen behind in making plan payments. The Debtors were in arrears $4,758.00, or approximately ten months. Again, the Trustee withdrew his motion upon the Debtors' becoming current with their Plan.

The Trustee brought a fourth motion to dismiss on or about June 25, 1998. This time the Trustee sought to dismiss the case because the Plan had run longer than five years. After a hearing, the Court denied the motion on August 18, 1998,

ruling that the Plan could extend beyond sixty months under the facts of the case.

The Trustee filed his fifth motion to dismiss on April 12, 1999 alleging that the Debtors had failed to pay the balance of $6,518.48 remaining due under the original terms of the Plan. The Court granted the motion on April 27, 1999, but subsequently vacated it on May 17, 1999 upon the Debtors' representation that the amount due had been paid. The bankruptcy court entered an order denying the motion to dismiss on July 1, 1999.

The Trustee filed his sixth and final motion to dismiss on July 8, 1999 on the basis that the Debtors' payments under the Plan were insufficient to pay both the IRS's postpetition tax claim and a dividend of ten percent to unsecured creditors as provided in the Plan. The bankruptcy court conducted a hearing on the matter on September 16, 1999 at which time it took the matter under advisement. Shortly after the hearing, on September 23, 1999, the IRS amended its postpetition claim and increased it to $42,000.00.

On October 12, 1999, the Debtors filed a motion for issuance of a discharge pursuant to 11 U.S.C. § 1328(a) or, in the alternative, for issuance of a hardship discharge under 11 U.S.C. § 1328(b). The bankruptcy court held a hearing on the motion on December 9, 1999 and took the matter under submission. Shortly after that hearing, on December 13, 1999, the IRS amended its postpetition tax claim for a second time, again increasing the total amount, based on unpaid employment taxes, to $53,619.00.

On April 14, 2000, the Court issued its memorandum opinion and order granting the Trustee's motion to dismiss and denying the Debtors' motion for entry of discharge. The Debtors filed a notice of appeal to the Bankruptcy Appellate Panel on or about April 24, 2000.

## II.  JURISDICTION

█ The Bankruptcy Appellate Panel has jurisdiction over this appeal as the order dismissing the Debtors' case and denying the Debtors their discharge is a final order.  *See* 28 U.S.C. § 158(a)(1) and (b).

## III.  STANDARD OF REVIEW

█ A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard while its conclusions of law are reviewed de novo.  *See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107–08 (1st Cir.1997); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1310–11 (1st Cir.1993).  *See also* Fed. R. Bankr.P. 8013.  A bankruptcy court's order dismissing a debtor's case should be overturned only if the debtors establish that the bankruptcy court committed a clear abuse of discretion.  *See Roumeliotis v. Popa (In re Popa)*, 214 B.R. 416, 418 (1st Cir. BAP 1997), *aff'd*, 140 F.3d 317 (1st Cir.1998), *cert. denied*, 525 U.S. 869, 119 S.Ct. 163, 142 L.Ed.2d 133 (1998).  "An abuse of discretion occurs when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales."  *United States v. Roberts*, 978 F.2d 17, 21 (1st Cir.1992) (cited in *Popa*, 214 B.R. at 418).  *See also Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988) ("Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.").  Similarly, the grant or denial of a debtor's request for a hardship discharge is within the discretion of the bankruptcy court and is reviewed on appeal for abuse of that discretion.  *See Bandilli v. Boyajian (In re Bandilli)*, 231 B.R. 836, 838 (1st Cir. BAP 1999) (per curiam).

## IV.  DISCUSSION

The Debtors present two issues on appeal.  The first is whether the bankruptcy court erred in granting the Trustee's motion to dismiss.  The second is whether the bankruptcy court erred in denying Mrs. Robert's motion for a hardship discharge.

### A.  DISMISSAL

█ Section 1307(c) of the Bankruptcy Code provides in relevant part:

> [O]n motion of a party in interest or the United States trustee and after notice and a hearing, the court may ... dismiss a case under this chapter ... for cause, including—
>
> . . .
>
> (6) material default by the debtor with respect to a term of a confirmed plan;
>
> . . . .

11 U.S.C. § 1307(c)(6).  In his dismissal motion, the Trustee requested that the Debtors' case be dismissed because the Plan, as confirmed, did not provide for payments sufficient to pay both the IRS's postpetition tax claim and a ten percent dividend to the Debtors' unsecured creditors.

The Debtors argue that they satisfied their obligations under the Plan simply by paying the monthly dollar amount stated in the Plan for sixty months.  The Debtors ignore their failure to comply with other provisions of the Plan that required the Debtors to pay any postpetition tax claims filed and to pay unsecured creditors ten percent of their claims.

■ Postpetition claims for taxes filed under 11 U.S.C. § 1305(a) are allowed and entitled to priority unless debtors successfully object thereto. *See In re Bryant,* 1998 WL 412632, No. 94–13471–SSM (Bankr.E.D.Va. Apr. 24, 1998). *See also* 11 U.S.C. § 1305(a) (providing that a proof of claim may be filed by any entity that holds a claim against the debtor for taxes that become payable to a governmental unit while the case is pending). Here, the Debtors failed to object to the IRS's postpetition claims. The Debtors also failed to file a motion pursuant to 11 U.S.C. § 1329 to modify the Plan in order to address the postpetition claims being filed by the IRS. *See* 11 U.S.C. § 1329(a) (providing that a plan made be modified at any time after confirmation of the plan but before completion of the plan payments).

Accordingly, the Debtors are bound by the terms of the confirmed Plan, a plan that they proposed, which provides for full payment of postpetition tax claims under section 1305(a) of the Bankruptcy Code. The Debtors have failed to pay the IRS tax claims in full. This constitutes a material default of the Plan warranting dismissal under 11 U.S.C. § 1307(c)(6). *See In re Woodall,* 81 B.R. 17, 18 (Bankr.E.D.Ark. 1987) (dismissing a Chapter 13 case that had been pending for more than five years when the only claims remaining to be paid in the case were the postpetition claims of the IRS). *See also In re Bennett,* 200 B.R. 252, 254–55 (Bankr.M.D.Fla.1996) (dismissing the debtor's case under 11 U.S.C. § 1307(c)(1) based on the debtor's continued failure to pay income and employment tax liabilities after confirmation of the Chapter 13 plan).

In addition, the Debtors have failed to make plan payments that would be sufficient to pay their unsecured creditors ten percent of the creditors' claims as provided in the Plan. The bankruptcy court acted properly in ruling that the Debtors' failure to make sufficient payments to allow a ten percent dividend to unsecured creditors warranted dismissal of the Debtors' case. *See In re White,* 126 B.R. 542, 547 (Bankr. N.D.Ill.1991) (finding that "the Debtors' failure to make sufficient payments to allow dividend distributions to the unsecured creditors totaling sixty-five percent of the allowed unsecured claims, constitutes a material default warranting dismissal of the case").

For these reasons, we conclude that the bankruptcy court did not abuse its discretion in granting the Trustee's motion to dismiss. Accordingly, we affirm the order granting the dismissal.

## B. DENIAL OF HARDSHIP DISCHARGE

■ The Debtors appeal the bankruptcy court's denial of Mrs. Roberts' request for a hardship discharge. Section 1328(b) of the Bankruptcy Code details the circumstances under which a hardship discharge may be granted and it provides:

At any time after confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). The party seeking the hardship discharge bears the burden of proof and must satisfy the court on all three elements. *See Bandilli,* 231 B.R. at 839. The parties in this case agree that the second and third elements have been met (i.e., creditors have received more through the Plan than they would have in Chapter 7 and modification of the Plan is not practicable given that the length of the Plan has exceeded sixty months already). Thus, the only issue is whether there were circumstances beyond Mrs. Roberts' control that justify granting her a hardship discharge.

"The determination of whether a debtor is justly accountable for his or her failure to make payments under his or her Chapter 13 plan is necessarily fact-driven, with the emphasis properly focused on the nature and quality of the intervening event or events upon which the debtor relies." *Bandilli,* 231 B.R. at 840. Here, the intervening event that caused the failure of the Plan was the IRS's filing of postpetition tax claims. This is not a case where the Debtors were unable to continue making plan payments due to an unforeseen economic circumstance. Rather, the Debtors made the dollar amount payments required by the Plan (perhaps using funds that should have been paid to the IRS), but these payments were insufficient to satisfy the Debtors' obligations under the Plan and the Bankruptcy Code.

Mrs. Roberts failed to prove that her inability to complete the Plan was due to circumstances for which she should not "justly be held accountable." While the increased liability to the IRS was based on her husband's failure to pay postpetition employment taxes, Mrs. Roberts took no action upon the IRS's filing of its postpetition claims, the first of which was filed in November 1996, only three years into the Plan. Mrs. Roberts made no attempt to modify the Plan or to sever her case from her husband's, actions that in all likelihood would have been allowed by the bankruptcy court and might have permitted her to obtain a discharge under 11 U.S.C. § 1328(a).

Accordingly, we agree with the bankruptcy court that the granting of a hardship discharge in this case would not be the result intended by Congress when it enacted section 1328(b). *See In re King,* 217 B.R. 623, 626 (Bankr.S.D.Cal.1998)(suggesting in a similar case that any prejudice that occurred as the result of the IRS's claim for postpetition taxes has been brought upon the Debtors by themselves). We conclude that the bankruptcy court did not abuse its discretion in denying Mrs. Roberts' motion for a hardship discharge. For that reason, we affirm the order denying issuance of a hardship discharge.

**V.  CONCLUSION**

For the reasons outlined above, the order of the bankruptcy court dated April 14, 2000 is AFFIRMED.