**In re Shirley Ann GRICE, Debtor.**

**No. 00–52995–PJS.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Dec. 27, 2004.

Jack L. Berman, Ferndale, MI, for Debtor.

### MEMORANDUM OPINION GRANTING DEBTOR'S MOTION FOR HARDSHIP DISCHARGE

PHILLIP J. SHEFFERLY, Bankruptcy Judge.

The Debtor filed this chapter 13 petition on August 30, 2000. She proposed a sixty-month plan with an expected 10% dividend to general unsecured creditors. Her plan was confirmed on December 22, 2000. The Debtor has since experienced serious medical problems, beginning in July, 2003. She filed a motion for a hardship discharge under § 1328(b), to which the Chapter 13 Trustee objected. The Court held a hearing on November 9, 2004, and took the matter under advisement pending the submission of supplemental briefs. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). For the reasons set forth below, the Court grants the Debtor's motion, subject to the Debtor paying to the Trustee an amount equal to the 2002 and 2003 income tax refunds that the Debtor received during the duration of the plan.

The Debtor has been a school bus driver for over twenty years and was employed by Inkster Public Schools. She has one dependent, a disabled adult child. The Debtor was diagnosed with cancer in July, 2003, and had surgery in August, 2003. She explained at the hearing that since that time, she was off work due to her illness more often than not, and had used up all of her sick leave. As a result, the Debtor's employer insisted that she retire, which the Debtor did in August, 2004. The Debtor verified for the Trustee that the Debtor's retirement was medically required by her employer and was not voluntary. The Debtor's retirement income is $1,180 per month.

The Debtor's confirmed amended plan provides for monthly payments of $1,203.00. Because the Debtor was paid bi-weekly, this required plan payments of $555.23. (See Order Confirming Plan (Pleading No. 18); Amended Wage Order (Pleading No. 20).) The Debtor claims

that she has made all her bi-weekly payments through September, 2004. The Trustee does not disagree with this contention. The confirmed plan also requires that the Debtor pay into the plan "100% of all future tax refunds [that she] received or [was] otherwise entitled to during the duration of [the] Plan." (First Amended Chapter 13 Plan at ¶ I.J. (Pleading No. 16).) At the hearing, the Debtor acknowledged that she had failed to pay her income tax refunds for 2002 and 2003 into the plan. She did not quantify the amount, but appeared willing to pay that amount to the Trustee.

■ Hardship discharges are governed by Bankruptcy Code § 1328(b), which provides as follows:

At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if-

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). The Debtor bears the burden of proving each element of § 1328(b). *Bandilli v. Boyajian (In re*

*Bandilli)*, 231 B.R. 836, 839 (1st Cir. BAP 1999) (citation omitted).

Focusing on the first element of § 1328(b), the Trustee contends that the Debtor should "justly be held accountable" for the circumstances that led to her failure to complete her plan payments.[1] 11 U.S.C. § 1328(b)(1). The Trustee is not referring to the Debtor's medical condition, but instead to a post-confirmation increase in income. When she filed her chapter 13 case, the Debtor projected monthly income of $2,160 in Schedule I. According to the Debtor's 2000 and 2001 income tax returns, the Debtor's actual monthly income during those years was $2,668 and $3,651, respectively. Thus, the Debtor's actual monthly income exceeded the amount that she projected in Schedule I by $500 in 2000 and $1,491 in 2001.[2] The Trustee argues that, if the Debtor had filed a post-confirmation plan modification to increase her plan payments based upon and at the time of her increased income, general unsecured creditors would have been paid in full. Instead, they are receiving no distribution, which is what the liquidation analysis showed they would have received if the Debtor had filed a chapter 7 petition instead of a chapter 13 petition. The Trustee contends that the Debtor has failed to complete her plan payments because she did not pay her additional actual income into the plan. Because this failure was not related to her cancer diagnosis and forced retirement, but instead was within the control of the Debtor, the Trustee concludes that the Debtor should justly be held accountable for her failure to complete her plan payments. In other words,

1. The Trustee does not dispute the Debtor's contention that she has met the second and third prongs of § 1328(b)—that creditors received as much as they would have under a chapter 7 and a plan modification is not practicable. 11 U.S.C. § 1328(b)(2)-(3).

2. The record is silent as to whether the Debtor's actual expenses during those years exceeded her projected expenses.

the Trustee argues that the Debtor experienced a change in circumstances, i.e., an increase in income, that would have allowed her to modify her plan and pay all claims in full. According to the Trustee, even if the Debtor herself did not file a plan modification, the Debtor had an ongoing obligation post-confirmation to provide the Trustee with updated information such that the Trustee could have filed a motion to modify the plan to increase payments.

For support, the Trustee does not point to any section of chapter 13 that would have required the Debtor to file a plan modification once her income increased, but instead relies upon § 521 of the Bankruptcy Code. Section 521 requires that debtors file, among other documents, "a schedule of current income and current expenditures," and "to cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title ...." 11 U.S.C. § 521(1), (3). Although it does not on its face impose a duty to continue to update information from time to time post-confirmation as the Debtor's circumstances may change, the Trustee urges the Court to read such a requirement into § 521. The Debtor strongly disagrees and argues that nothing in the Bankruptcy Code or her confirmed plan impose a continuing duty on her to provide updated financial information through the life of her chapter 13 case. Although the Court finds the policy espoused by the Trustee to be appealing, the Trustee did not cite to any statutory provisions implementing such policy or imposing such duty on the Debtor.

A different result might be obtained if the confirmed plan had required the Debtor to provide updated income data on an ongoing basis. The Trustee sometimes asks to include such a provision in the order confirming plan, for example, when a debtor has received overtime pay in the recent past but claims that her employer has eliminated or reduced overtime. In such a case, there is a need to monitor future income levels because there is a question at confirmation about the debtor's projected disposable income under § 1325(b)(1)(B). However, § 521 of the Bankruptcy Code does not impose this requirement nor did the Debtor's plan.

Section 1328(b)(1) addresses a "debtor's failure to complete such payments ...." "Such payments" refers to "payments under the plan". In this case, "such payments" are the $555.23 bi-weekly payments, plus the income tax refunds received by the Debtor during the life of the plan. With the exception of the latter payments for 2002 and 2003, which will be addressed below, the Debtor made her plan payments up until the time her illness necessitated her retirement. The Trustee did not argue that the Debtor was somehow responsible for her medical condition. Instead, the Trustee's argument is that the Debtor would not have hesitated to file a plan modification to *reduce* her plan payments if faced with a decrease in income, yet now seeks to avoid giving creditors the benefit of her increased income. The Debtor acknowledged that, had the Trustee known of her increased income, the Trustee could have filed a plan modification under § 1329(a), and, depending upon whether the Debtor's expenses had also increased or not, that modification may well have been approved. Thus, the Trustee contends that the Debtor freely invokes the protections of the Code when it benefits her, but is unwilling to allow creditors to do likewise.

At first blush, the Trustee's argument is attractive because of its sense of fairness. However, it misses two points. First, it is indisputable that the reason that the Debtor did not complete her payments was because of her illness and the loss of in-

come it caused. Irrespective of any increases in income that the Debtor may have received prior to her illness, there is nothing in the record to contradict the Debtor's statements that she was diagnosed with cancer and, as a result, she was forced to retire and could no longer make the required plan payments. Whatever may have taken place earlier in her plan, it is easy to trace a direct line between the Debtor's illness and her failure to complete the plan payments. That is what is required by § 1328(b)(1).

■ Second, the Trustee fails to take into account the limited benefit that the Debtor is gaining from a hardship discharge. The scope of a hardship discharge under § 1328(b) is delineated by § 1328(c). Section 1328(c) in turn removes the special broad discharge provisions of § 1328(a). Thus, in essence, a hardship discharge is the equivalent of a chapter 7 discharge. The benefit that the Debtor now seeks is a chapter 7 discharge, and not the special discharge of § 1328(a). "Chapter 13 is not involuntary servitude. It is a purely voluntary chapter ...." 1 Keith M. Lundin, *Chapter 13 Bankruptcy* § 3.2 (3d ed. 2002 & Supp.2004). In a chapter 13, "[t]he debtor must choose either the repayment of debt over a period of years often by deductions from the debtor's paycheck or the instant gratification of a chapter 7 discharge." *Id.* § 3.3.

Chapter 13 is in essence a way of paying creditors the equity in a debtor's estate over time and without the disruption caused by liquidation. For example, an unencumbered automobile in a Chapter 7 case would ordinarily be liquidated by the Chapter 7 trustee and the proceeds distributed to creditors. In a Chapter 13 case, the debtor remains in possession of even an unencumbered automobile so long as creditors are compensat-

ed for the value of that automobile through confirmation of the plan.

*Id.* § 4.8 (footnotes omitted).

Creditor interests are promoted through ratable recoveries from future income not available to creditors in liquidating bankruptcy proceedings ... Congress intended to encourage, but not require, financially overextended individual debtors to make greater voluntary use of repayment plans commensurate with each debtor's abilities, as the most effective means of improving, first, debtor relief and, second, creditor recoveries ....

8 *Collier on Bankruptcy* ¶ 1300.02 (15th ed. rev.2004) (footnotes omitted).

If the Debtor in this case was seeking a chapter 13 discharge, the Trustee's policy argument would be stronger. The Debtor would be receiving the benefit of chapter 13's "super" discharge. In exchange, creditors would be entitled to the maximum recovery. In this case, the Debtor's creditors are not being treated unfairly. They are receiving exactly what they would have received if the Debtor had filed a chapter 7 petition. That the Debtor tried to pay them more in her chapter 13, but failed because of her illness, should not bar her from receiving the same discharge that she would have been entitled to receive in a chapter 7.

■ However, in addition to the bi-weekly payments, the Debtor's confirmed plan also requires payment of her income tax refunds into the plan. The Debtor admitted her failure to do so. She also did not file any motion to excuse these payments, nor did she offer any reason at the hearing for her failure to remit the funds to the Trustee. Unlike the Debtor's failure to complete the bi-weekly payments, the Court finds that the Debtor should justly be held accountable for her failure to pay her income tax refunds into the

plan. However, the Debtor appeared willing to make good on those payments and the Court will require her to do so.

■ Even if all three of the conditions set forth in § 1328(b) are met, the Trustee asserts that § 1328(b) is written in the permissive and that the Court is not required to grant the hardship discharge if, in the totality of circumstances, the Court concludes that it should not be granted. Upon a debtor meeting the three specified requirements, the statute reads that the Court "may" grant a hardship discharge, not that the Court "shall" grant a hardship discharge. The Trustee encourages the Court to exercise its discretion and take into account the intervening circumstances, specifically the fact that the Debtor's income turned out to be substantially greater than what was projected at the commencement of the case. The Trustee characterizes the Debtor's failure to pay the additional income into the plan as a misuse of property of the estate and an indication of a lack of good faith. The Trustee argues that the Court should treat requests for hardship discharges with "special vigilance" and "some gravity". *See In re Bandilli,* 231 B.R. at 840 ("[A] request for discharge under § 1328(b) merits special vigilance."); *In re Easley,* 240 B.R. 563, 565 (Bankr.W.D.Mo.1999) (finding a general agreement among courts that "a request for a hardship discharge is to be treated with some gravity"). Some courts have gone so far as to require "catastrophic circumstances" where the debtor has suffered "the maximum misery possible." 4 Lundin, *Chapter 13 Bankruptcy* § 353.1 n. 4 (collecting cases).

The published opinions that articulate the "special vigilance" and "catastrophic circumstances" standards do so, for the most part, in the context of discussing § 1328(b)(1). There are no published opinions that address the exercise of a

court's discretion in granting a hardship discharge when a debtor has otherwise met each of the specified requirements of § 1328(b). The Trustee asks that the Court exercise its discretion to deny the discharge and base its decision on a finding that the Debtor in this case has acted improperly. The Court rejects the contention that the Debtor has somehow misappropriated property of the estate. The Debtor's plan follows the model plan in this district. Section I.D. provides that, under § 1327(b) of the Bankruptcy Code, all property of the estate vested in the Debtor upon confirmation. (Pleading No. 16 at 1.) The Debtor's income only became property of the estate to the extent that the income was projected disposable income. The Debtor paid her projected disposable income into the plan, with the exception of the 2002 and 2003 income tax refunds. The additional income, which was not projected as of confirmation, never became projected disposable income and remained vested in the Debtor. Neither the Code nor the confirmed plan obligated the Debtor in this case to pay the additional income to the Trustee. Therefore, her failure to do so does not evidence a lack of good faith or improper conduct that prevents a hardship discharge.

The Court also does not agree that motions for hardship discharges should only be granted where there are "catastrophic circumstances" and examined with "special vigilance" or "gravity" as the Trustee suggests. The statute simply does not set the bar so high. It does not require death, catastrophe, or maximum misery or suffering. Instead, it focuses on accountability in § 1328(b)(1). The Court declines to elevate this explicit statutory requirement and, further, does not see any policy that would be served by reading into the statute a more heightened showing in this case. The Debtor paid bi-weekly pay-

ments continuously for nearly three years until she was diagnosed with cancer and then for another year after that until she was forced to retire. Whatever circumstances might exist to warrant the Court's declining to exercise its discretion in some other case where the three specific conditions of § 1328(b) are met, this is not an appropriate case to do so.

Accordingly, the Debtor's motion for a hardship discharge is GRANTED conditioned upon the Debtor paying to the chapter 13 Trustee an amount equal to the income tax refunds that she "received or otherwise [was] entitled to during the duration of this Plan." (Pleading No. 16 at ¶ I.J.) The Debtor shall submit an order consistent with this opinion.