**In re Vincent L. YOUNG and Paquita S. Young, Debtors.**

**No. 03–31975.**

United States Bankruptcy Court, E.D. Wisconsin.

July 2, 2007.

Michael J. Watton, Milwaukee, WI, for Debtors.

Rebecca A. Holzhauer, Oshkosh, WI, for Trustee.

### MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION

MARGARET DEE McGARITY, Chief Bankruptcy Judge.

Before the court is the chapter 13 trustee's objection to the debtors' proposed plan modification relieving the debtors of the obligation to turn over to the trustee for distribution to creditors any income tax refunds due in the past or going forward. For the reasons stated herein, the objection is sustained in part and overruled in part.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the court has jurisdiction under 28 U.S.C. § 1334. Since

the case was filed on August 5, 2003, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 do not apply. The following constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

## BACKGROUND

The debtors' original chapter 13 plan, filed on August 12, 2003, was silent as to tax refunds, but pursuant to local custom, the order of confirmation dated October 14, 2003, required annual submission of tax returns and one-half net refunds, if any, to the trustee. The confirmation order required the debtors to:

> Timely file all federal and state tax returns which the debtor(s) are otherwise required to file by law and send copies of said returns to the trustee each year the plan is in effect and pay one-half (½) of the net refunds received by the debtor(s) into the plan each year the plan is in effect as an additional dividend to creditors with allowed unsecured claims.

Order Confirming Plan, signed October 14, 2003, entered October 15, 2003. According to the debtors' original schedules, their combined monthly income totaled $1,867.30 and total monthly expenses were $1,625.00, leaving $56.00 to be paid into the plan weekly. Plan payments were projected to total $14,560.20. The plan was confirmed without objection. The trustee received one-half of the net refunds from 2004, but the 2003 and 2005 refunds were not paid into the plan. The debtors also failed to submit copies of their 2006 tax returns or one-half of the refunds, if any.

After the trustee filed a motion to dismiss based on the missing tax refunds from 2003 and 2005, the debtors filed a modified plan on January 25, 2007, with notice to all creditors, waiving the past-due refunds as well as any future refunds that would become due under the prior confirmation order. The trustee objected to confirmation of the modified plan. Both parties submitted briefs and the court took the matter under advisement.

## ARGUMENTS

The trustee argues it is not fundamentally fair to retroactively waive the tax refunds promised to creditors under the existing confirmation order. Additionally, one-half of the future net refunds, which are property of the estate, should be remitted toward the plan because they are akin to future earnings and are disposable income. The trustee points out that while the Seventh Circuit determined that modifications under section 1329 do not require a change in circumstances, *Matter of Witkowski*, 16 F.3d 739 (7th Cir.1994), that court did not determine whether section 1325(b), which requires submission of all the debtor's disposable income to the plan if there is an objection, was applicable when the trustee opposed the debtor's modification. *See also In re Than*, 215 B.R. 430 (9th Cir. BAP 1997) (holding section 1325(b) did not apply to modification under section 1329 unless there is an objection from the trustee or from an unsecured creditor). Regardless of whether or not the disposable income test is applicable to plan modifications, the trustee maintains income tax refunds are property of the estate and future earnings which should be submitted to the supervision and control of the trustee.

The debtors argue that their plan may be modified to waive a default in prior plan payments, as well as to exempt them from having to provide any portion of their income tax refunds to the estate. Although the disposable income test of 11 U.S.C. § 1325(b) arguably does not apply to a section 1329 modification, the debtors agree their ability to pay must still be

considered under a good faith analysis. The debtors' Amended Schedules I and J, also filed on January 25, 2007, clearly show that their tax refunds are reasonably necessary for their support and maintenance. The debtors thus urge this court to review the tax refund issue on a case-by-case basis—instead of just assuming that one-half of the tax refunds are disposable income—as no two debtors are alike.

## DISCUSSION

Under 11 U.S.C. § 1329(b)(1), the modification of any plan is subject to the requirements of sections 1322(a), 1322(b), 1323(c), and 1325(a). Compliance with the first three of these subsections is not challenged. Section 1325(a) provides a list of requirements for confirmation, such as the "best interests of the creditors" test, and compliance with this and other plan provisions is generally not in dispute. However, section 1325(a) also requires that "the plan compl[y] with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). The trustee focuses his challenge on this subsection.

■ The requirement that disposable income be devoted to the plan for at least three years falls under 11 U.S.C. § 1325(b), and this subsection is not among the provisions required to confirm a plan *modification*. The trustee points out that several courts have found the provisions of section 1325(b) are incorporated by reference in section 1325(a). This argument is unpersuasive. Section 1329(b)(1) explicitly provides that, along with section 1325(a), sections 1322(a) and (b) and 1323(c) apply to postconfirmation modifications, but section 1325(b) is simply not there. The plain meaning of the statute supports the conclusion that modification is not subject to the disposable income

test. *See In re Golek*, 308 B.R. 332, 336–37 (Bankr.N.D.Ill.2004).

■ Nevertheless, when a confirmed plan is modified, the modified plan must, among other things, be proposed in "good faith," and must satisfy the "ability to pay" and other tests. 11 U.S.C. §§ 1325(a)(3)-(6), 1329. Thus, the parties seem to agree that our inquiry should include whether or not the tax refunds are necessary for the maintenance and support of the debtors.

The debtor husband had significant medical expenses and a job loss postconfirmation. He is currently employed, but his income has decreased. *See* Court Minutes from Hearing Held March 13, 2007. The debtors' amended plan included the following new provision:

> Debtor[s] will not be send[ing] in any tax refund money as it is necessary for the support and maintenance of the debtors. Prior years['] tax refunds were used to supplement an unreasonable budget (electric bill and medical expenses). Debtors had fallen behind in multiple bills since the commencement of this case and have used the tax refund money to survive. In the future, the debtors have redone their budget to include the tax refunds and feel they would be able to complete the plan if the tax refunds are not required.

Amended Chapter 13 Plan, dated January 24, 2007, filed January 25, 2007. Plan payments were projected to total $16,411.00. The debtors' amended schedules showed a total combined monthly income of $1,520.51 and total monthly expenses of $1,272.00, leaving $249 available to be paid into the plan each month. The debtors' income is substantially less than 150 percent of the poverty guidelines published by the United States Department of Health and Human Services.

A review of the debtors' expenses reveals a bare-bones monthly budget, includ-

ing $200 allocated toward food, $25 toward clothing, and $0 toward recreation and entertainment. This may be that rare case where one-half of the tax refunds should not be used to fund the plan, but rather to afford the debtors an opportunity to maintain their already sparse standard of living. It would be extremely difficult to find bad faith here, and after observing the debtors' testimony, the court declines to do so. Furthermore, the $91.67 per month that is shown on the Amended Schedule I as a tax refund (presumably 1/12 of the total received for 2006) is necessary for the debtors' current support.

As the Seventh Circuit points out, however, the right to modify a plan is not limitless. *Witkowski*, 16 F.3d at 745. Section 1329 provides for three circumstances allowing modifications: (1) to increase or reduce payments to a particular class of claims; (2) to extend or reduce the time for payments; and (3) to alter the amount of distributions to a particular creditor to take into consideration payments other than under the plan. Forgiveness of prior plan defaults is not among these allowable reasons for modification.

This is not to say that the code cannot offer relief to a debtor who has fallen on hard times during the pendency of a chapter 13 case. The debtors here are not seeking a hardship discharge, but that code provision may give some guidance as to when it might be appropriate to allow a prior default or violation of the plan or order of confirmation, and still grant bankruptcy relief. Section 1328(b) provides the authority for granting hardship discharges. It states:

> At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

> (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

> (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

> (3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). Most courts faced with a request for a hardship discharge have required the presence of catastrophic or compelling circumstances. *See, e.g., In re Bandilli*, 231 B.R. 836, 838 (1st Cir. BAP 1999) (an unanticipated death precluding payments under a confirmed plan held to be a catastrophic circumstance beyond the debtor's control to support granting a hardship discharge). These debtors have not faced death or disability. Their reasons for the modification are just chronically poor economics, and they undoubtedly still need the case to help save their home. Therefore, hardship standards do not apply.

This court has always looked askance at changes to the playing field this late in the game. *See In re Zakowski*, 213 B.R. 1003 (Bankr.E.D.Wis.1997) (holding it would not be fair to secured creditor to require release of its lien just a few months prior to plan's completion when, due to continuous negotiations throughout the pendency of the plan, the bank expected to be paid in full). Here, the debtors moved to amend their plan and gave notice to creditors in January, presumably before the 2006 refunds were received and spent, and creditors did not object. That cannot be said for 2003 and 2005. Interested parties have a right to expect that debtors will

comply with court orders, and they can expect that proper compliance will be monitored by the trustee. Inevitably, it was detected by the trustee, although not before the money was spent, as will almost always be the case (perhaps not three years, but definitely before the case is closed).

No excuse was given as to why the plan was not modified within a reasonable period after the debtors' needs arose. Clearly, they were aware of the requirement in the order of confirmation; they did comply with respect to their 2004 refund. It is only fair that if the creditors' expected dividends will not materialize, notice should be given to creditors *before* the funds disappear, or within a reasonable time thereafter. The years-long delay before the plan modification in this case was not reasonable. With sufficient foresight in future cases, a refund might even be held in escrow in the event the court were to deny confirmation of the proposed amendment.

Consequently, the debtors will not be allowed to modify their confirmed plans retroactively to retain one-half of tax refunds previously committed to their creditors. One-half of the 2003 and 2005 income tax refunds must be paid to the trustee to complete the plan. Since a timely motion was made to approve a plan that prospectively allows retention of the debtor's entire 2006 refund, and all other necessary requirements for confirmation were met, the debtors can propose a plan that does not require submission of any of that, or subsequent, refund. However, timely submission of tax returns continues to be necessary to allow the trustee an opportunity to challenge retention of what might be payable toward the plan.

The trustee's objection is sustained with respect to 2003 and 2005, but the debtors' proposed plan with respect to the 2006 refund can be confirmed. The debtors shall have thirty days to propose a plan consistent with this decision. A separate order to that effect will be entered.

## ORDER SUSTAINING IN PART AND OVERRULING IN PART TRUSTEE'S OBJECTION TO CONFIRMATION

For the reasons stated in the court's memorandum decision entered on this date, IT IS ORDERED the trustee's objection to confirmation of the debtors' modified plan is sustained in part and overruled in part.

IT IS FURTHER ORDERED the debtors shall have thirty days to propose a plan consistent with the court's decision.